Christopher V. Hoke, (Atty. #1211098)
Hoke Law
2825 Rose St. #202
Anchorage, AK 99508
(907)331-0437
chris@hoke-law.com
Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AK Industrial Hemp Association, Inc., Primo Farms North LLC d/b/a Primo, GD Sales LLC d/b/a Hempire-Co., McDonough Corp Inc., d/b/a Frontier CBDs, ALASKA EDIBLES LLC, d/b/a Alaska Gummies | **COMPLAINT** |
| Plaintiff(s), | |
| v. | |
| Alaska Department of Natural Resources, | |
| John C. Boyle III (Commissioner Alaska Department Natural resources), | Case No. 3:23-cv-_____ |
| Alaska Division of Agriculture, | |
| Bryan Scoresby (Director Division of Agriculture), | |
| State of Alaska, | |
| Nancy Dahlstrom (Alaska Lieutenant Governor), | |
| Defendant(s) | |
| _____ | |

1

# COMPLAINT

Plaintiffs, Alaska Industrial Hemp Association, Inc., Primo Farms North LLC d/b/a Primo, GD Sales LLC d/b/a Hempire-Co., McDonough Corp Inc., d/b/a Frontier CBDs, ALASKA EDIBLES LLC, d/b/a Alaska Gummies (collectively "Plainitiffs") hereby come before this court bringing their complaint against Defendants Alaska Department of Natural Resources, John C. Boyle III (Commissioner of the Department of Natural Resources) Alaska Division of Agriculture, Bryan Scoresby (Director Division of Agriculture), State of Alaska, and Nacy Dahlstrom (Alaska Lieutenant Governor), seeking declaratory and injunctive relief challenging the constitutionality of amendments to regulations 11 AAC 40.010-910, by the Alaska Department of Natural Resources, which have the effect of destroying the Alaska Industrial Hemp Pilot Program -- a Federally approved program authorizing Alaska to regulate hemp production in the state by the United State Department of Agriculture; the secondary, if not primary purpose of amendments are to protect and insulate the state's (Federally illegal) marijuana industry while discriminating against the Federally legal hemp industry in its infancy.

<u>Introductory Statement</u>

The amended regulatory scheme has been heavily affected by the state's Alcohol and Marijuana Control Board, which regulates production, cultivation, processing, manufacturing, testing, and commercial sale of marijuana. Hemp, is the significantly less intoxicating, and as of 2018 no-longer-Federally controlled

substance, sharing the same chemical makeup of marijuana. Hemp and marijuana, grown from the exact same plant genus species *Cannabis Sativa L.*, is processed to create some of the exact same commercial products, potentially containing the exact same quantities of "tetrahydrocannabinols", commonly known as "THC." Delta-9-THC, simply put, the psychoactive compound in marijuana that is known to get one 'high'.

The 2018 Federal legislation that legalized hemp, the Agricultural Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill"), is not silent to this scientific fact that hemp and marijuana are from the same plant. The 2018 Farm Bill defined hemp, limiting the amount of THC that hemp may contain to "no more than 0.3% delta-9-THC". This requires that hemp be produced differently than marijuana, and often processed to decrease the amount of Delta-9-THC in products.

Where hemp must limit the amounts of Delta-9-THC in products, marijuana is often marketed to consumers heavily leaning on THC amounts contained in products, regularly over 20% and in-fact over 30% THC in some cases. Effectively, the strongest marijuana products at 30% or higher contain 9,900% more Delta-9-THC per unit than the strongest possible hemp products. The best parallel for intoxication in this context is that there is 7,900% difference in strength between the 0.5% maximum alcohol by volume defined by the F.D.A. for 'non-alcoholic beverages' and common spirits contain 40% alcohol by volume.

3

The amended regulations by the Department of Natural Resources, Division of Agriculture (hereinafter "DNR" and "DoAg", respectively) have a clear protectionist affect on the State's marijuana businesses and the state's marijuana tax regime. The amendments state that the DoAg may declare any cannabis product for human consumption as a "public nuisance injurious to the public interest," and grants the DoAg the right to destroy the products once declare a public nuisance. Additionally, the DoAg will no longer endorse any industrial hemp product that contains Delta-9-THC, which a significant portion of the final product, and depending on when tested for THC, all hemp products. Thus, the processing and manufacturing of cannabis products contain no more than 0.3% Delta-9-THC will be left entirely to the marijuana industry, which has lesser testing requirements than hemp.

What will remain is a system where citizens will venture into marijuana retailers to purchase products used for recreation, but for pain relief, relaxation and stress relief, sleep support, reduction in joint inflammation and muscle recovery. Studies have shown CDB oils to have positive affects on individuals with PTSD and caused reductions in convulsive seizures in people suffering from epilepsy. It is not difficult to imagine a scenario where a person wanting to be sold a hemp product purchases a marijuana product, being told that the two products are the exact same. While that may be the case, one product is Federally legal and the other is not; using one product may affect eligibility for Federal programs or affect one's ability to purchase a firearm and the other does not; using one product may

4

jeopardize a person's ability to be granted Federal clearance and the other does not.

For all of these reasons Plaintiffs seek declaratory and injunctive relief as the amended regulations will destroy Alaska's hemp industry, remove any incentive for future agricultural development or investment in the industry, cost companies which invested in the Federally legal industry significant sums of money, put their employees out of work, and make it impossible to for citizens to purchase their Federally hemp products locally, many using these products for medicinal and health purposes – forcing them to order products from outside of Alaska. While the 2018 Farm Bill states in Sec. 10114 that hemp is not prohibited from interstate commerce and that "(b) "No state…shall prohibit the transportation or shipment of hemp or hemp products [produced under Federal authority or state regulation approved by the USDA]," commerce shall be affected as immediately as the DoAg begins to implement the regulations.[1] The regulatory effect of the amendments is contrary to the purpose of the Alaska Industrial Hemp Pilot Program, and is contrary the Commissioner of the DNR's statutory mandate to grow agricultural industry, and the regulations have already created significant amounts of confusion moving forward to those registered with the pilot program to sell products and citizens using the products. For these reasons, plaintiffs seek that the State be

---

[1] Exhibit 1 – USDA Executive Summary of Hemp Authorities (5/28/2019).

immediately enjoined from enforcement of the regulations that go into effect November 3, 2023.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

2.     Venue is proper in this district is pursuant to 28 U.S.C. § 1391.

3.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201, 2202.

4.     This action is also brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of, under color of state law, of rights secured by the Constitution of the United States.

## PARTIES

5.     Plaintiff, Alaska Industrial Hemp Association is a 501(c)(3) non-profit organization with its principle place of business in Alaska. Its members are mostly registered hemp producers with the State of Alaska DoAg.

6.     Plaintiff, Primo Farms North LLC is a limited liability company with its principal place of business located in Anchorage, Alaska.

7.     Plaintiff, GD Sales, LLC is a limited liability company with its principal place of business located in Wasilla, Alaska.

8.     Plaintiff, McDonough Corporation Inc. is an Alaska Corporation with its principal place of business located in Anchorage, Alaska.

6

9.     Plaintiff, Alaska Edibles LLC is a limited liability company with its principal place of business located in Wasilla, Alaska.

10.     Defendant the Alaska Department of Natural Resources is the executive agency in charge of the enforcement of the regulations that control the Alaska Industrial Hemp Pilot Program, through its control and oversight of the Division of Agriculture.

11.     Defendant John C. Boyle III is the Commissioner of the Department of Natural Resources in charge of the Department of Natural Resources responsible for the amended regulations at issue, and is sued in his official capacity due to having signed the Order amending the regulations in question. Mr. Boyle III holds a supervisory role over the employees within the Department and the Division of Agriculture whom will be responsible for enforcing the amended statutes.

12.     Defendant the Alaska Department of Natural Resources, Division of Agriculture, directly controls the Industrial Hemp Pilot Program and the enforcement of the regulations and amendments at issue in this lawsuit.

13.     Defendant Bryan Scoresby is the Director of the Department of Natural Resources Division of Agriculture and directly supervising the Industrial Hemp Pilot Program and the enforcement of the regulations and amendments at issue in this lawsuit.

14.     The State of Alaska and its executive branch are in charge of enforcement of agency regulations and adoption of new regulations.

7

15.     Defendant Nancy Dahlstrom is the Lieutenant Governor who supervises the Office of the Lieutenant Governor whose office signed the Order certifying the regulations to take effect November 3, 2023.

## GENERAL ALLEGATIONS

16.     This is a lawsuit challenging the constitutionality of amendments to 11 AAC 40.020-910, regulations adopted by the Alaska Department of Natural Resources ("DNR"), Division of Agriculture ("DoAg") that take effect November 3, 2023.

17.     In 2018, the Congress passed legislation, signed into law titled Agricultural Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill") that legalized the production of "hemp" for commercial purposes under certain circumstances, defining it separately from marijuana (the 'higher-THC' containing version of the same plant that grows hemp), and importantly carved out an exemption for hemp-based "tetracannabinols" amending the Controlled Substances Act effectively removing hemp from the Schedule I list of controlled substances.

18.     The 2018 Farm Bill, Sec. 10113 adopted the definition of "hemp" using the exact same language as used to define "hemp" in the Agricultural Marketing Act of 1946 Sec 297A [7 U.S.C. § 1639o] as:

> The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

8

19.    Alaska received authorize to regulate the production of hemp in Alaska after submission a plan to the U.S. Department of Agriculture to regulate "hemp" production in accordance with the 2018 Farm Bill, and the U.S.D.A. approved Alaska's plan.

20.    Alaska's legislature enacted statutes regarding hemp, namely AS 03.05.010(a)(7) et seq and AS 03.05.076-079, all under Title 3 of the Alaska Statutes relating to Agriculture, Animals and Food.

21.    The Commissioner of Natural Resources, a political appointee, John C. Boyle III, was appointed December 16, 2022.

22.    The Alaska legislature in AS 03.05.010(a)(1) tasks that the Commissioner of the Department of Natural Resources "shall direct, administer and supervise . . . agricultural projects for the purpose of promoting and developing commercial and noncommercial agricultural industry in the state…"

23.    Upon applying to the USDA for approval to initiate its Industrial Hemp Pilot Program and having that program approved, the Commissioner, assumed the duties delegated to the Department by the Alaska legislature.

24.    The DNR DoAg and the Commissioner notifies and works with the Alcohol and Marijuana Control Office to the extent necessary when issuing stop orders to registered or non-registered hemp growers in accordance with AS 03.05.010(c).

9

25.     On September 23, 2023, the Commissioner of the DNR, John C. Boyle III signed the "Order adopting changes to regulations of the Department of Natural Resources" under his authority granted in AS 03.05.[2]

26.     On October 4, 2023, April Simpson for Lieutenant Governor Nancy Dalhstrom, in her official capacity, signed the Filing Certification under the Order signed by John C. Boyle III.[3]

27.     The Order adopted amendments to, new subsections added, and the repeal of certain regulations pertaining to the regulation of Alaska's Industrial Hemp Pilot Program approved by the USDA.

28.     On September 29, 2023, the Alaska Department of Law drafted an published a letter stating in-part "The [amended DNR] regulations prohibit the Division of Agriculture from endorsing for sale products containing psychoactive chemicals. . . anticipat[ing] a decrease in participants in the industrial hemp market due to the prohibition on trace psychoactive chemicals."[4]

29.     On October 5, 2023 ,the DNR published a press release confirming the opinion of the Department of Law, stating the changes "Make[] it illegal for growers, manufactures and retailers in Alaska to sell industrial hemp products containing delta-9-THC intended for human or animal consumption.[5]

---

[2] See Exhibit 2 – Amended Regulations Dep't Nat. Resources (9/23/2023) at pg 4.
[3] Id.
[4] See Exhibit 2 – Amended Regulations Dep't Nat. Resources (9/23/2023) at pg 2.
[5] Exhibit 3 – Dep't Nat. Res. – Press Release (10/5/2023)

30.     The DNR press release also confirmed that "the Division of Agriculture will not endorse any industrial hemp product containing delta-9-THC."

31.     The press release also states that the "revised industrial hemp rules increase safety for Alaskan children and protections for the regulated cannabis industry in our state, said DNR Commissioner John Boyle. The Industrial Hemp Program was never intended to allow intoxicating products, which are rightfully regulated for the recreational market in Alaska by the Alcohol & Marijuana Control Office.[6]

32.     The amended regulations removed from the Federal definition of "hemp" the requirement that hemp be derived from the plant *Cannabis sativa L.* when defining "industrial hemp product" and "hemp product" at 11 AAC 40.910(30).

33.     The amended regulations redefined hemp at 11 AAC 40.910(9)(a)-(b) defining CBD requiring that it be "naturally occurring" and "not synthetic", contrary to recent 9th Cir. precedent. See AK Futures LLC v. Boyd St. Distro, LLC, 35 F.4th 682, 695 (9th Cir. 2022).

34.     "CBD" is an acronym for cannabidiol.

35.     Both growers of marijuana and growers of hemp are growing the same plant, *Cannabis sativa L.*

---

[6] Id.

36.	Whether growing hemp or marijuana, both plants naturally contain THC and CBD.

37.	In order to process hemp to be in compliance with Federal and State law to contain no more than 0.3% delta-9-THC, hemp producers often must process the products in order to lower the delta-9-THC levels.

38.	By Federal law, hemp requires testing at a DEA testing facility which tests for heavy metals, pesticides, microbes, and mycotoxins, and all Alaska hemp producers have their products tested for Delta-9-THC levels as well.

39.	Alaska marijuana requires testing delta-9-THC, but currently is testing for marijuana is less extensive than for hemp.

40.	Many marijuana products contain Delta-9-THC levels in excess of 20% and some over 30%.

41.	All endorsed hemp products contain Delta-9-THC levels of 0.3%, as required by Federal law.

42.	The Alaska DoAg publishes both its lists of currently registered hemp producers and sellers[7], and its currently endorsed products.[8]

43.	There are currently approximately 217 registrants in the Industrial Hemp Program, several listed multiple times with multiple d/b/a businesses.

---

[7] Exhibit 4 – spreadsheet of current AK hemp program registrants
https://plants.alaska.gov/hemp/pdf/resources/AIH%20Registrants_TODAY.pdf
(10/24/2023)
[8] Exhibit 5 – Spreadsheet of DoAg's endorsed hemp products
https://plants.alaska.gov/hemp/pdf/resources/AIH%20Endorsed%20Products%20_TODAY.pdf (10/24/2023)

44.     Currently there are approximately 700 products endorsed for sale by the Industrial Hemp Program.

45.     The amended regulations at 11 AAC 40.800(5) declares any cannabis product for human consumption with delta-9-THC to be a public nuisance injurious to public interest.

46.     11 AAC 40.800(6) works in tandem with 800(5) such that any "industrial hemp product for human consumption declared to be a public nuisance", may be ordered destroyed by the DoAg.

47.     Having expressed the DoAg amended regulations 'make it illegal to sell industrial hemp products in their final form that contain delta-9-THC', the DoAg will surely no longer endorse any industrial hemp products that contain any delta-9-THC.

48.     It is unclear exactly how many different hemp products are currently endorsed by the DoAg because the Division endorses entire product lines under a single endorsement.

49.     Plaintiffs stand to lose over $2,000,000 in products that the DoAg could be ordered destroyed on or after November 3, 2023.

50.     Amongst the other currents registrants with the DoAg Industrial Hemp Pilot Program, based upon the amounts of stock held by the plaintiffs, there may very well be in excess of $80,000,000 worth of retail hemp and CBD products derived from hemp that contain delta-9-THC.

51.     The types of products for human consumption ranges from hemp based CBD oils, to gels, to gummies, to hemp based CBD-infused ice cream, all containing no more than 0.3% delta-9-THC.

52.     The amended DoAg regulations provide no guidance as to whether the registrants whom only have endorsed product which contain delta-9-THC for human consumption will continue to be registrants with the program after the regulations go into effect.[9]

53.     If human consumption follows the broad definition of consumption in 11 AAC 40.910(13), then virtually hemp products will be prohibited and all endorsements removed, and the DNR will claim the authority to destroy all hemp products.

54.     The amended DoAg regulations provide no guidance as to whether registrants will be provided any window of time after the regulations go into effect to have their registry with the Program long enough to sell their products to a state in which they can be sold.[10]

55.     The amended DoAg regulations provide no guidance as to whether products previous endorsed shall remain endorsed for the period of time until their endorsements end.

_____

[9] See generally Exhibit 6 – Public Notice of Dep't Nat. Res. Amended Regs (published 6/8/2023)
[10] Exhibit 6 – Public Notice of Dep't Nat. Res. Amended Regs (published 6/8/2023)

56.     The amended DoAg regulations provide no guidance as to how the Department of Public Safety and the Alaska State Troopers will treat the possession of endorsed or previously endorsed products, whether or not the program's registrant was suspended or has their registry revoked, after the regulations take effect.[11]

57.     Specifically, the amended DoAg regulations provide no guidance as to any interplay with *Alaska Statutes 11.71 et seq* (pertaining to Misconduct Involving Controlled Substances).

58.     DoAg has no internal enforcement agents.

59.     Alaska's Alcohol and Marijuana Control Office has hired enforcement agents and under the enforcement section the DoAg regulations regarding hemp 11 AAC 40.800(10) states that the DoAg may "cooperate and communicate with the Marijuana Control Board, the Department of Public Safety, or any other peace officers."

60.     The amended DoAg regulations provide no guidance as to how or when any endorsed hemp products which contain delta-9-THC may be reconditioned or sold to marijuana related companies regulated by AMCO as the two regimes differ.

61.     Current registrants of the Industrial Hemp Program have not been advised by the DoAg regarding what the DoAg intends to have happen in any

---

[11] Id.

manner than can be used to plan for the futures of their business or whether they can continue sale of their currently endorsed Federally legal hemp-derived products after November 3, 2023.

62.  The DoAg has not defined whether any endorsed items that contain only trace amounts of delta-9-THC, less than 0.1% THC will remain endorsed for sale or considered a public nuisance.

63.  Because all hemp plants naturally have delta-9-THC, there will naturally be trace amounts of delta-9-THC in almost every product.

64.  The DoAg, but the regulations do not clarify if the threshold is 0.04%THC rounding down to 0.00% or if 0.00000001% rounds up to be an impermissible amount of THC for human consumption.

65.  If some miniscule or trace amount of delta-9-THC remains in an endorsed hemp product to be sold for human consumption, the amended DoAg regulations do not clarify the threshold above which those trace amounts are un-endorsable or create a public nuisance.

66.  It takes significant costs and efforts to completely remove all delta-9-THC from a hemp or marijuana product.

67.  Many if not all of the same products that are endorsed and hemp-derived are manufactured or could be manufactured to be created with marijuana, although they would fall outside of the definition of Federally legal hemp as the products are not derived from hemp, or contain more than 0.3% delta-9-THC if initially derived from hemp.

16

68.     For these reasons, plaintiffs seek expedited consideration by motion that this court grant a Temporary Restraining Order and preliminary injunctive relief enjoining this court from enforcing the DNR, the DoAg, its leadership or the State of Alaska from enforcing the amended regulations to 11 AAC 40.010-910 aimed to take effect November 3, 2023.

## CAUSES OF ACTION

### COUNT I – Declaratory Judgment for Violations of the 2018 Farm Bill

69.     Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

70.     An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the lawfulness of hemp products.

71.     The Alaska Department of Natural Resources and its commissioner have a duty mandated by the Alaska legislature "to grow agricultural industry."

72.     The Alaska DNR Commissioner's duty extended to grow the hemp industry upon approval of the DoAg's application to the USDA's Industrial Hemp Pilot Program.

73.     Regulations adopted by the DNR DoAg must follow the goals of the 2018 Farm Bill which provided intelligible guidance for determining violations that require enforcement.

74.     "A violation of a State or Tribal plan approved…shall be subject to enforcement solely in accordance with [7 U.S.C. § 1639p(e)], specifically

violations pertaining to hemp not falling within the Federal definition of hemp, containing more than 0.3% delta-9-THC.

75.     The Alaska DNR DoAg amended regulations were not submitted to the USDA with its original application, specifically pertaining to declaring Federally legal hemp products a "public nuisance injurious to public interest." See 11 AAC 40.800(5)-(6).

76.     In declaring such Alaska grown hemp-products a public nuisance injurious to public interest, the State of Alaska DNR is sending clear signals to consumers that shall have effects on interstate commerce, namely qualifying a state belief that Federally legal products are harmful – without a finding that the hemp product falls outside of the Federal definition.

77.     Alaska hemp products are producing hemp products for human consumption that are Federally legal or containing more than 0.3% delta-9-THC.

78.      The 2018 Farm Bill prohibited states from interfering with the transport and shipment of hemp or hemp products through interstate commerce.

79.     Defendants, by declaring hemp products that are intended for human consumption that contain delta-9-THC a public nuisance are negatively affecting interstate commerce as producers of hemp in other states, namely wholesalers, will be unable to sell to Alaskans because their products can no longer be endorsed for sale – having a cumulative affect of the regulations will burden interstate commerce.

80.     Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal

Rules of Civil Procedure, Plaintiffs request a declaration that the DNR's regulatory amendments to 11 AAC 40.010-910 violate the 2018 Farm Bill and are preempted by Federal law and violate the commerce clause.

81.     The DNR's definition of hemp products for human consumption containing delta-9-THC is re-definition of hemp is impermissibly in conflict with the Federal definition in the 2018 Farm Bill, despite Congress's declaration that states are not permitted to modify the definition of hemp.

82.     Additionally, the DNR's regulatory amendments to 11 AAC 40.010-910 regarding the definition of CBD conflict with recent 9th Circuit interpretation of the 2018 Farm Bill whereas synthetic cannabidiols, specifically delta-8-THC and products that contain delta-8-THC, were declared lawful by the plain text of the 2018 Farm Act in AK Futures LLC v. Boyd St. Distro, LLC, 35 F. 4th 682, 695 (9th Cir. 2022).

83.     In accordance with the 9th Circuit's decision in AK Futures that the plaint text of the 2018 Farm Bill's only defining characteristics of hemp are it is derived from the plant Cannabis sativa L. and that it contain no more than 0.3% delta-9-THC, the DNR's amendment to 11 AAC 40.910(9) redefining "CBD" such that (B) it does not include synthetic cannabidiol, all conflicts with Federal law.

84.     The criminalization of any hemp derivatives such as delta-8-THC and potentially other cannabidiols as the DNR amendments attempted to further by redefining 'CBD' conflicts with the plaint text of the 2018 Farm Bill.

85.     The Supremacy Clause unambiguously provides that if there is any

conflict between federal and state law, federal law shall prevail.

86.     The DNR's regulatory amendments are in conflict with the 2018 Farm Bill pursuant to the Supremacy Clause of the Constitution of the United States and conflicts of laws principles. US. Const. Art. VI, cl.2.

87.     Moreover, DNR's new regulatory scheme, if permitted to take effect, cannot be enforced without impairing Federal oversight of the transportation of hemp, and also creating an inconsistency between the State and Federal definitions of "hemp" for the State's regulatory purposes which do not align with the 2018 Farm Bill.

88.     Plaintiffs have been and will be harmed if the DNR's regulatory amendments.

89.     Plaintiffs have no adequate remedy at law to correct or redress the deprivation of their rights by Defendants.

90.     An actual controversy exists between Plaintiffs and Defendants regarding the constitutionality of the DNR's regulatory amendments for which plaintiff's request a declaratory judgment.

## COUNT II – Declaratory Judgment for Violation of the Dormant Commerce Clause

91.     Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

92.     All hemp is Federally lawful to possess, and hemp that fits the

20

Federal definition may not be interfered with as it flows through interstate commerce.

93.    The DNR in its October 5, 2023 press release, expressly states that the purposes for the amended regulatory scheme are: (1)"protections for the regulated cannabis industry" and (2) "the Industrial Hemp Program was never intended to allow intoxicating products, which are rightfully regulated for the recreational market in Alaska by the Alcohol & Marijuana Control Office". <u>Exhibit 4 - Dep't Natural Resources Press Release (10/5/2023)</u>

94.    While the press release also states a goal is "to increase public safety for Alaska children," providing no support for that goal, the state has decided to discriminate against interstate commerce.

95.    Defendants are blatantly and expressly taking actions in violation of the dormant commerce clause.

96.    11 AAC 40.400(d) declares that the DNR may not endorse any hemp product that contains delta-9-THC, and may not endorse any non-naturally occurring cannabinoid modified beyond its original form; thus the DNR will no longer endorse any hemp product as all hemp contains at least some trace amounts delta-9-THC, and the Alaska Department of Law anticipates a decrease in participants in the hemp market due to the prohibition on trace psychoactive chemical. <u>Exhibit 3 - Letter from Dep't of Law to Lieutenant Gov. Nancy Dahlstrom (9/29/2023)</u>.

97.    The amended DNR Regulations fundamentally altered 11 AAC 40.800(5)-(6) such that (5) the division may declare as a public nuisance injurious to public health (B) any cannabis produced for human consumption (which includes any hemp products); and (6) that the DNR Division of Agriculture may direct the movement and destruction of any cannabis product for human consumption declared to be a public nuisance.

98.    Previously cannabis products for human consumption containing delta-9-THC below the Federal 0.3% limit were not declared a public nuisance.

99.    The DNR creates a substantial and protectionist burden on interstate commerce in violation of the Dormant Commerce Clause as all cannabis products whose regulation falls to the DNR for hemp are declared a public nuisance injurious to public interest.

100.    Meanwhile Alaska's regulated cannabis industry sells products for human consumption with 10,000% more delta-9-THC than exists in hemp products to be declared a public nuisance by the DNR.

101.    Thus, the reason to declare hemps products a public nuisance is not that hemp products for human consumption contain any amount of delta-9-THC, it is that the sale of hemp products negatively affects the Alaska cannabis industry.

102.    Generally speaking, it is markedly cheaper to make hemp products than marijuana products – therein lies the problem and the reason Alaska needs to protect the Federal illegal market.

103. While Hemp products remain Federally legal and the 2018 Farm Bill restricts the State's ability to stop the flow of hemp products in interstate commerce, defendants aim to remove from interstate commerce millions of dollars worth of hemp products produced by Alaskan companies, and to declare the products a public nuisance for regulatory destruction.

104. The DNR's scheme of regulatory amendments is expressly protectionist of the State's federally illegal marijuana industry, discriminating against the hemp industry which places Federally legal hemp products into interstate commerce as hemp products are both purchased from other states and Alaska grown hemp products are sold to consumers in other states.

105. The amendments will cause regulatory removal of DoAg endorsements for of Alaska hemp products is discriminatory against interstate commerce, benefitting Alaska's marijuana industry

106. Plaintiffs seek declaratory relief that the DNR's adoption of its amended regulations are in violation of the Dormant Commerce Clause and therefore unconstitutional.

## COUNT III:REGULATORY TAKING

107. Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

108. Anticipating that the amended DNR regulations are unconstitutional and in violation of dormant commerce challenges and the DNR acts on its

statements to prohibit all hemp products for human consumption, the destruction of currently endorsed hemp products amounts to a regulatory taking.

109. Defendants' intent is clear, to prohibit all hemp products containing any amount of delta-9-THC for human consumption.

110. If human consumption follows the broad definition of consumption in 11 AAC 40.910(3), then virtually all hemp products will be prohibited and all endorsements removed, and amended regulations allow DNR to destroy all hemp products as they are all intended for human consumption and contain at least trace amounts of Delta-9-THC.

111. The problem with the regulatory scheme is that the new amendments, coupled with statement of the DNR's intent, make clear the unconstitutional nature of the amendments which amounts to an impermissible regulatory taking because it effectively creates a total ban of hemp products containing any amount of delta-9-THC, without any language regarding just compensation.

112. Plaintiffs and registrants in Alaska's Industrial Hemp Program have made significant investments in their businesses based on the Federal government's 2018 Farm Bill and Alaska's approved plan by the USDA.

113. The USDA would never have approved a plan which stated that the sale of any hemp product containing any amount of delta-9-THC is prohibited.

114. Permitting Alaska to regulate hemp production, knowing that it would prohibit the existence of an industrial hemp industry is not rational.

115. Such a plan would have been denied and the USDA would have regulated hemp production in accordance with 2018 Farm Bill.

116. In accordance with 7 U.S.C. § 1639q, where there is no State or Tribal approved plan to regulate hemp production, the production of hemp in that State or the territory of that Indian tribe shall be subject to a plan established by the Secretary to monitor and regulate that production in accordance with paragraph (2).

117. The DNR's amended regulatory scheme shows that Alaska, by prohibiting the sale of all or virtually all hemp products is no longer interested in the regulation of the hemp industry consistent with its previous application to the USDA.

118. The DNR's regulatory scheme and complete prohibition of the sale of hemp products that contain delta-9-THC infringes upon the investment-backed expectations and industries in which plaintiff, Alaskan citizens and consumers have come to rely, and employees having built their livelihoods. For this reason, the amended regulatory scheme amounts to a deprivation of all, or substantially all, beneficial economic use of plaintiff's hemp-derived products, lines of business, and goodwill created with the consumers of the State of Alaska.

119. As statements from the Alaska DNR clarify its intent to prohibit the sale of all hemp products and there will be no Federally authorized manner in which hemp products can be sold inside or out of the State of Alaska as the products shall immediately lose their endorsements, the DNR is executing a

regulatory taking, burdening plaintiff and taking any and all value of their property without just compensation.

## COUNT IV: VOID FOR VAGUENESS

120. Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

121. The Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution prohibit criminal enforcement of statutory and regulatory requirements that are unconstitutionally vague and do not give fair warning of their requirements. U.S. Const. Amend. V, XIV.

122. DNR's regulatory amendments (11 AAC 40.020 – 11 AAC 40.910), when coupled with *AS 11.71 et seq.* (Alaska criminal statutes for Misconduct Involving Controlled Substances), and clarified the DNR's press release that it is illegal for growers, manufacturers and retailers to sell industrial hemp that contains any delta-9-THC for human or animal consumption, make clear that currently Federally legal hemp producers and users and possessors of hemp products may suffer criminal charges, specifically for possession for controlled substances once endorsements and protections of hemp products are removed.

123. The intention of the DoAg is to no longer endorse and remove all endorsement for all products containing delta-9-THC for human consumption.

124. The amount of product endorsements to be immediately revoked is significant, after which possession of such products loses Federal protection, and risks the State of Alaska determining that possession is in violation of Alaska

criminal statutes.

125.     A cursory review of the DoAg's 700+ endorsements[12] for Federally legal hemp products will show that hundreds of products risk having their endorsement immediately revoked on November 3, 2023.

126.     The removal of these endorsements will leave tens of millions of dollars worth of investments made into the hemp industry valueless, and leave hemp producers currently in possession of in many cases in excess of $100,000 worth of hemp to have criminal liability.

127.     11 AAC 40.800(5)-(6) as stated in previous paragraphs work in tandem to declare every hemp product a public nuisance injurious to public health and permitting the DoAg to order destroyed millions of dollars' worth of retail products.

128.     The likelihood of the DoAg taking immediate action to destroy property owned by currently registrants with the State's Hemp program is real and not hypothetical, never specified in public notice or within the regulations themselves, and based upon DNR's October 5, 2023 press release attached, is clear – it is illegal to sell hemp products that contain delta-9-THC intended for human or animal consumption.

---

[12] Exhibit 6 – Spreadsheet of DoAg's endorsed hemp products
https://plants.alaska.gov/hemp/pdf/resources/AIH%20Endorsed%20Products%20_TODAY.pdf (10/24/2023)

129.   11 AAC 40.910(13) defines "consumption" broadly to mean "any method of ingestion of or application to the body, including eating, drinking, inhaling, absorbing, or injecting"; thus all currently endorsed hemp products shall become illegal to sell.

130.   The DNR alludes that it shall permit the sale of hemp paper, rope and linens, but the DoAg endorsement list of hemp based products includes no ropes or linens or textiles.

131.   The DNR's lack of self-awareness about its own industry is a farce.

132.   The currently endorsed products are all for human consumption and virtually all contain at least some trace amounts delta-9-THC; a cursory review of the endorsed products list shows this.[13]

133.   If permitted to become effective, current registrants of the Alaska Industrial Hemp Program could very well face criminal charges as they will no longer be in possession of a Federally legal substance when their hemp licenses are revoked.

134.   The regulatory amendments are silent and provide registrants and the public zero guidance with regard to the criminality of hemp possession after the regulations go into effect.

---

[13] Exhibit 6 – spreadsheet of current endorsed hemp products
https://plants.alaska.gov/hemp/pdf/resources/AIH%20Endorsed%20Products%20 0_TODAY.pdf

135. The Public Notice[14] and the regulatory scheme was intentionally ambiguous as to whether or not the DoAg regulations were a prohibition of all hemp products containing delta-9-THC, or would be left to discretion.

136. Statements from the DNR make clear that the DNR and DoAg intend to prohibit endorsement of all hemp products containing any amount of delta-9-THC, which is virtually all products.

137. The public notice and the amended regulations are ambiguous as to potential criminality of possessors of hemp, as the products were not created in accordance with the AMCO regulations.

138. While public notice took place for the prescribed amount of time, neither Public Notice,[15] nor the regulations were clear that the DoAg's intent was to remove endorsement of all hemp products.

139. As the public comment and amended regulations made no efforts to plainly state their goals, leaving average citizens in a state of having to completely guess their meaning, leaving plaintiffs and members of the public to suffer unknown criminal liability, and as the statements and opinions after-the-fact by the DNR through its press release, establish the true intent of the regulations to include "protections for the regulated cannabis industry" stating the position of the State of Alaska that "the Industrial Hemp Program was never intended to allow intoxicating

---

[14] See generally Exhibit 6 – Public Notice of Dep't Nat. Res. Amended Regs (published 6/8/2023)
[15] Id.

products, which are rightfully regulated for the recreational market in Alaska by the Alcohol & Marijuana Control Office," plaintiffs request this court find the regulations constitutionally void for vagueness.

## COUNT V – INJUNCTIVE RELIEF

140.   Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

141.   Plaintiffs are likely to succeed on the merits of their challenge as the DNR openly violates the dormant commerce clause expressly stating the reasons for its regulations are purely protectionist of Alaska's Federally illegal marijuana industry which aims to sell and tax products sold currently by Federally legal hemp producers, claiming all hemp products for human consumption to be a public nuisance injurious to public interest while the marijuana industry sells the same products – except they will be Federally illegal marijuana-based products.

142.   Enjoining the protectionist regulatory scheme is in the public interest for multiple reasons, namely because stopping unconstitutional acts is always in the public interest.

143.   Secondarily, Alaskans have come to use Federally legal hemp products for reasons apart from recreation, mostly medicinal, and Alaskans will have to go to marijuana retailers to purchase similar products, that will inevitably be marijuana-based and Federally illegal.

144.   Alaskan businesses will suffer irreparable harm if the amended regulations are not enjoined from going into effect, causing millions of dollars of

lost investments; the regulations also aim to completely kill a budding Federally legal industry.

145. If Alaska wished to stop regulating the production and sale of hemp, it should have resigned its application to the USDA; instead it takes protectionist actions contrary to the purposes of the 2018 Farm Bill and aims to remove from interstate commerce millions of dollars worth of federally legal products.

146. The State offers two reasons for its action, only after public comment on the amended regulations ended (1) protection of the children and (2) protection of the federally illegal marijuana industry – all the while providing no evidence to support either goal.

147. When harm to the plaintiffs outweighs the benefits to the State from its purported goals.

148. For these reasons and all reasons alleged, plaintiff request the court grant immediate temporary restraining order in accordance with the civil rules followed by a permanent injunction.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that the court:

(a) Set this matter for a prompt hearing on plaintiffs' request for a temporary restraining order;

(b) Enter a judgment in their favor and against defendants;

(c) Declare the DNR's amended regulations void in their entirety and declare all hemp-derived products that comply with the federal definition of hemp as

legal under federal law, and that Alaska's efforts to define hemp products as a public nuisance and prohibit their free flow in interstate commerce outside of the State of Alaska unconstitutionally preempts federal law;

(d) Declare that the DNR's amended regulations are in violation of the dormant commerce clause;

(e) Issue a temporary restraining order or preliminary injunction, later to be made permanent, enjoining defendants (including all persons in concert or participations with them, including but not limited to law enforcement personnel and prosecutors' offices) from enforcing the amended regulations ordered by the DNR to take effect November 3, 2023 and from taking any steps to criminalize the sale, possession, manufacture, financing, distribution, or transportation of hemp-derived cannabinoids that do not exceed 0.3% delta-9-THC on a dry weight basis;

(f) Award the plaintiffs their costs and attorneys' fees incurred bringing this action; and

(g) Award plaintiffs all other just and proper relief.

*****

Dated: November 2, 2023.

Respectfully submitted,

Christopher V. Hoke (1211098)
Hoke Law
2825 Rose St. #202
Anchorage, AK 99508
(907) 331-0437
(907) 887-1164
chris@hoke-law.com

33