# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AK INDUSTRIAL HEMP ASSOCIATION, INC., *et al.*,<br><br>               Plaintiffs,<br>    v.<br><br>ALASKA DEPARTMENT OF NATURAL RESOURCES, *et al.*,<br><br>               Defendants. | Case No. 3:23-cv-00253-SLG |

## ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER OR ALTERNATIVE MOTION FOR PRELIMINARY INJUNCTION

Before the Court at Docket 4 is Plaintiffs' Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction.[1] Defendants responded in opposition at Docket 11;[2] Plaintiffs did not file a reply. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

This lawsuit is about the State of Alaska's ("State") regulation of industrial

---

[1] The original Plaintiffs are AK Industrial Hemp Association, Inc.; Primo Farms North LLC; GD Sales LLC; McDonough Corp Inc.; and Alaska Edibles LLC. *See* Docket 1. Plaintiffs also filed a memorandum in support of their Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction at Docket 7. Plaintiff subsequently filed an Amended Complaint that added more Plaintiffs at docket 14.

[2] Defendants are the Alaska Department of Natural Resources; John C. Boyle, III, in his official capacity as Commissioner of the Alaska Department of Natural Resources; the Alaska Division of Agriculture; Bryan Scoresby, in his official capacity as the Director of the Alaska Division of Agriculture; the State of Alaska; and Nancy Dahlstrom, in her official capacity as the Alaska Lieutenant Governor.

hemp products intended for human or animal consumption. In 2018, the federal government authorized states to take "primary regulatory authority over the production of hemp in the State" if the state submitted a hemp regulation plan to the U.S. Department of Agriculture ("USDA") and met certain other requirements, pursuant to the Agriculture Improvement Act of 2018 ("2018 Farm Bill").[3] The 2018 Farm Bill defined "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."[4]

While the 2018 Farm Bill authorized states to take control of hemp production if they met certain requirements, it also specifically provided that the legislation would not "preempt[] or limit[] any law of a State" that "(i) regulates the production of hemp; and (ii) is more stringent than this subtitle."[5] However, the 2018 Farm Bill did preempt state laws regarding the interstate transportation of hemp products, providing that "[n]othing in this title or an amendment made by this title prohibits the interstate commerce of hemp . . . or hemp products" as defined

---

[3] Pub. L. No. 115-334, § 10113, 132 Stat. 4490, 4909-12 (2018) (codified at 7 U.S.C. § 1639p). For ease of reference, the Court cites to the 2018 Farm Bill by using its codified provisions in the United States Code.

[4] 7 U.S.C. § 1639o(1).

[5] *See* Pub. L. No. 115-334, § 10113, 132 Stat. 4910; 7 U.S.C. § 1639p(a)(3)(A).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 2 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 2 of 18

by the federal statute, and that "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products . . . through the State."[6] The State of Alaska, which had started an industrial hemp pilot program in 2018,[7] subsequently updated its definition of "industrial hemp" in 2021 to be consistent with the definition of "hemp" in the 2018 Farm Bill.[8] The Alaska Department of Natural Resources ("DNR"), Division of Agriculture, also submitted a plan to the USDA for State regulation of industrial hemp production pursuant to the 2018 Farm Bill; the plan was approved and took effect in January 2022.[9] The plan did not include any age restrictions "for individuals to purchase endorsed products from retailers that are registered under the State Hemp Plan."[10] The State's industrial hemp regulations are set forth at Title 11 of the Alaska Administrative Code ("AAC"), Chapter 40.

Effective November 3, 2023, the State amended its industrial hemp regulations to remove the authority of the Division of Agriculture to endorse any hemp products containing any delta-9-tetrahydrocannabinol ("delta-9-THC") or

---

[6] Pub. L. No. 115-334, § 10114, 132 Stat. at 4914.

[7] S.B. 6, 30th Leg., 2d Sess. (Alaska 2018).

[8] S.B. 27, 32d Leg., 1st Sess. (Alaska 2021).

[9] *See* S.B. 27, 32d Leg., 1st Sess. (Alaska 2021); Alaska Stat. § 03.05.076(i); Alaska Dep't of Nat. Res., Div. of Agric., *USDA Industrial Hemp Program Alaska State Plan* (2021) [hereinafter State Hemp Plan], available at
https://www.ams.usda.gov/sites/default/files/media/AlaskaStateIndustrialHempPlan.pdf.

[10] Docket 11-3 at 4 & n.3 (also noting that "[b]ecause age-restrictions to purchase endorsed products were not included in the legislation authorizing the State Hemp Plan, the Department of Natural Resources cannot implement the restriction through regulations"); *see generally* State Hemp Plan, *supra* note 9.

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 3 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 3 of 18

"non-naturally occurring cannabinoid," pursuant to a newly-enacted subsection, 11 AAC 40.400(d).[11]  11 AAC 40.400 also requires a hemp distributor to obtain an endorsement in order to offer to consumers in Alaska, "with or without compensation," hemp products intended for human or animal consumption.[12] Thus, the amendment effectively prohibits the in-state sale of hemp products intended for human or animal consumption that contain any delta-9-THC or other non-naturally occurring cannabinoid.[13]  In addition, 11 AAC 40.400 was amended to remove the endorsement requirement for the transportation of hemp products intended for human or animal consumption in and through Alaska, regardless of delta-9-THC content.[14]

Plaintiffs, including various companies that deal in hemp products, challenge the State's recently amended regulations.[15]  They filed their complaint on November 2, 2023, bringing five causes of action: declaratory relief for violations

---

[11] "Hemp products" and "industrial hemp products" are used interchangeably in this order. The amended industrial hemp regulations can be found in the order adopting changes to regulations at Docket 1-2.  The same adoption order containing the amended regulations can also be found at https://aws.state.ak.us/OnlinePublicNotices/Notices/Attachment.aspx?id=144035.

[12] 11 AAC 40.400(a).

[13] See 11 AAC 40.400(a), (d).

[14] See Docket 1-7 at 2 (notice of proposed changes to Alaska industrial hemp regulations); Docket 11-1 at 7 ("The regulations removed the requirement that a person obtain an endorsement to transport within the state a processed industrial hemp product intended for human or animal consumption."); Docket 1-2 at 15 (deleting language in brackets, "transported in the state or"—it appears that brackets indicate deletion within the adoption order for the amended regulations).

[15] Docket 1 at ¶ 16.

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 4 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 4 of 18

of the 2018 Farm Bill,[16] declaratory relief for violation of the dormant Commerce Clause,[17] regulatory taking,[18] a claim that the regulations are void for vagueness,[19] and injunctive relief.[20] On the same day, they filed the instant motion for a temporary restraining order or, in the alternative, preliminary injunction.[21] Plaintiffs request that the Court enjoin the State from enforcing the amended regulations pending resolution of this lawsuit.[22]

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law, 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. Whether a federal law preempts a state law is a question of federal law.[23]

---

[16] Docket 1 at ¶¶ 69-90.

[17] Docket 1 at ¶¶ 91-106.

[18] Docket 1 at ¶¶ 107-119.

[19] Docket 1 at ¶¶ 120-139.

[20] Docket 1 at ¶¶ 140-148. Plaintiffs have since filed an amended complaint after this motion was filed. *See* Docket 14 (Am. Complaint); Docket 19 (order accepting amended complaint).

[21] Docket 4. Plaintiffs also filed a motion for expedited consideration of the motion for a temporary restraining order/preliminary injunction, which the Court denied. *See* Docket 5; Docket 8.

[22] Docket 4 at 1.

[23] *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 214 (1985).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 5 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 5 of 18

**LEGAL STANDARD**

The standard for obtaining a temporary restraining order is "substantially identical" to that for a preliminary injunction.[24] In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[25] The Supreme Court in *Winter* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[26]

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that its "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element *Winter* test."[27] Under that approach, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships

---

[24] *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Since the standard for obtaining a temporary restraining order is "substantially identical" to that for a preliminary injunction, the Court considers them together in this order.

[25] 555 U.S. 7, 20 (2008).

[26] *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

[27] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 6 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 6 of 18

tips *sharply* in the plaintiff's favor.'"[28]  "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'"[29]  They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'"[30]  All four *Winter* elements must still be satisfied under this approach,[31] but the last two elements—the balance of hardships and consideration of the public interest—merge where, as here, a governmental entity is a party to the action.[32]

## DISCUSSION

The Court first considers whether Plaintiffs have demonstrated that they are likely to succeed on the merits of each of their claims.  Plaintiffs assert that the State's amendments to its industrial hemp regulations at 11 AAC 40.010-40.910

> (1) expressly and publicly violate the dormant commerce clause burdening interstate commerce while benefitting in-state interests, namely the Alaska marijuana industry; (2) redefine[] Federal law definition of "hemp" in violation of the Supremacy clause; (3) create a regulatory taking[;] and (4) [are] void for vagueness [for] not having provided enough guidance to citizens and registered hemp growers

---

[28] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[29] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)); *see also Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1273 (N.D. Cal. 2014) ("'Serious questions' refers to questions 'which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo . . . .'" (quoting *Gilder*, 936 F.2d at 422)).

[30] *Gilder*, 936 F.2d at 422 (quoting *Marcos*, 862 F.2d at 1362).

[31] *All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors.").

[32] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 7 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 7 of 18

whom are part of the State's Industrial Hemp pilot program.[33]

## I. Dormant Commerce Clause

The dormant Commerce Clause refers to the prohibition, implicit in the Commerce Clause, against States "enact[ing] laws imposing substantial burdens on [interstate or foreign] commerce."[34] "Modern dormant Commerce Clause jurisprudence primarily 'is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'"[35] However, States still "retain broad power to legislate protection for their citizens in matters of local concern such as public health," and "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States."[36] The Supreme Court in *Pike v. Bruce Church, Inc.*, set forth the following dormant Commerce Clause rule:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on

---

[33] Docket 7 at 1-2.

[34] *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (first quoting *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984); and then citing *Or. Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 98 (1994)).

[35] *Id.* at 1148 (quoting *Dep't of Revenue v. Davis*, 553 U.S. 328, 337-38 (2008)).

[36] *Id.* (quoting *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)) (other citations omitted).

Case No. 3:23-cv-00253-SLG, AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 8 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 8 of 18

whether it could be promoted as well with a lesser impact on interstate activities.[37]

Here, the amended industrial hemp regulations likely "regulate[] even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental."[38] While Plaintiffs assert that the State's hemp regulations violate the dormant Commerce Clause, it appears that the regulations at issue here affect both in-state and out-of-state competitors equally, as the regulations provide that all hemp products, wherever produced, containing any delta-9-THC and intended for human or animal consumption cannot be sold to a consumer in Alaska.[39] This rule contains no restrictions on to whom it applies, so it does not appear to "discriminate against interstate commerce."[40] Further, Plaintiffs have not demonstrated how the regulations' effects on interstate commerce are more than incidental. And although Plaintiffs express concern that the Alaska DNR Commissioner stated that the regulations would provide "protections for the regulated cannabis industry in our state,"[41] the Commissioner explained that the regulations target a public health and safety concern, because "[t]he Industrial Hemp Program was never intended to allow intoxicating products,

---

[37] 397 U.S. 137, 142 (1970) (citations omitted).

[38] *See id.* (citation omitted).

[39] 11 AAC 40.400(a), (d).

[40] *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987)).

[41] *See* Docket 7 at 6 (quoting Docket 1-4 at 1).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 9 of 18

which are rightfully regulated for the recreational market in Alaska by the Alcohol & Marijuana Control Office."[42] The State thus contends that "these regulations are aimed at targeting a bona fide public health concern: the easy availability of any product that contains delta-9-THC or a non-naturally occurring cannabinoid to a person under 21 years-of-age."[43]

The State has identified a legitimate local purpose for the new regulations. As such, the question then becomes whether the extent of any burden on interstate commerce is "clearly excessive in relation to the putative local benefits."[44] At this very preliminary stage of litigation and on the record that was before the Court on this motion, Plaintiffs neither discussed nor produced sufficient evidence to show that any burden imposed on interstate commerce was excessive when weighed against the public health benefit of the newly enacted regulations. Accordingly, the Court finds that Plaintiffs have not shown a likelihood of success on the merits of their dormant Commerce Clause claim.

## II. Supremacy Clause

The Supremacy Clause provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the

---

[42] Docket 1-4 at 1.

[43] Docket 11-1 at 11. *See also* Docket 11-2 at 2 (letter to the Governor of Alaska noting that some hemp-derived products contain higher quantities of delta-9-THC than approved marijuana products, and that such hemp products can be readily obtained by minors).

[44] *Pike*, 397 U.S. at 142.

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 10 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 10 of 18

supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."[45] The preemption doctrine derives from the Supremacy Clause, which makes a state law void if it conflicts with federal law or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[46]

Plaintiffs assert that the State's amended industrial hemp regulations impermissibly conflict with the federal definition of "hemp" by (1) declaring "all hemp for human consumption a public nuisance," and (2) defining cannabidiol ("CBD") as "not to include synthetics," which Plaintiffs contend is in conflict with Ninth Circuit case law "declar[ing] all CBDs derived from hemp are hemp."[47] On this second point, the Court does not read the Ninth Circuit's decision in *AK Futures LLC v. Boyd St. Distro, LLC*, which Plaintiffs cite, to stand for that proposition.[48] Plaintiffs' first argument regarding the public nuisance issue is unclear to the Court. But the Court notes that Plaintiffs have not alleged that the Alaska DNR, Division of Agriculture, "has ever sought to declare any of their products as a public

---

[45] U.S. Const. art. VI, cl. 2.

[46] *See Maryland v. Louisiana*, 451 U.S. 725, 747 (1981) (citations omitted).

[47] Docket 7 at 8 (citing *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 695 (9th Cir. 2022)); *see also* Docket 1-2 at 31-32 (showing amendments to hemp regulations concerning public nuisances); Docket 1-2 at 34 (showing amendments to the definition of CBD under 11 AAC 40.910(9), where CBD is now defined to "not include synthetic cannabidiol").

[48] 35 F.4th at 691 (holding in trademark infringement action that the 2018 Farm Bill's definition of hemp includes delta-8-THC products and, thus, such products are eligible for trademark protection under federal law).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 11 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 11 of 18

nuisance subject to destruction."[49]  Nor have Plaintiffs explained how Alaska's regulations regarding public nuisances and CBD conflict with federal law.

Plaintiffs further maintain that a "clear purpose of the federal 2018 Farm Bill is to create an industrial hemp industry," and that the "highest profit margin items" for the hemp industry "are all hemp products for human consumption, oils, gummies, [and] gels."[50]  The State, however, notes that hemp has had a long history "as an agricultural commodity."[51]  The State also points out that the 2018 Farm Bill contains two provisions regarding preemption:[52] It expressly provides that "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products . . . through the State."[53]  It further provides that "[n]othing in this subsection preempts or limits any law of a State" that "(i) regulates the production of hemp; and (ii) is more stringent than this subtitle."[54]  Thus, state laws prohibiting the interstate transportation of hemp as defined by the federal statute are expressly preempted, but states may otherwise stringently regulate hemp production.

In sum, the Court concurs with the State's analysis that the "amendments to Alaska's industrial hemp regulations are . . . not preempted by the 2018 Farm

---

[49] *See* Docket 11-1 at 18.

[50] Docket 7 at 9.

[51] Docket 11-1 at 13.

[52] Docket 11-1 at 13.

[53] Pub. L. No. 115-334, § 10114, 132 Stat. at 4914.

[54] Pub. L. No. 115-334, § 10113, 132 Stat. 4910; *see also* 7 U.S.C. § 1639p(a)(3)(A).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 12 of 18

Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 12 of 18

[Bill]."⁵⁵  The State's industrial hemp regulations are now more stringent than the federal regulation of hemp, which the 2018 Farm Bill expressly permits.⁵⁶  In addition, because the State removed the endorsement requirement for transporting hemp (with any level of delta-9-THC) in Alaska, the state regulation does not run afoul of federal law because it does not prohibit the interstate transportation of hemp products.⁵⁷  Plaintiffs, therefore, have not shown a likelihood of success on the merits of this Supremacy Clause claim.

### III. Regulatory Taking

There are two types of claims under the Takings Clause: First, "[w]hen the government carries out 'a physical appropriation of property, a *per se* taking has occurred.'"⁵⁸  Second, if the government "'has instead restricted a property owner's ability to use his own property,' a court must evaluate the action under the three-factor test announced in *Penn Central Transportation Co. v. City of New York* . . . to determine whether it constitutes a 'regulatory taking.'"⁵⁹  "Determining whether

---

⁵⁵ *See* Docket 11-1 at 13.

⁵⁶ *See* 7 U.S.C. § 1639p(a)(3)(A); Docket 11-1 at 14.

⁵⁷ *See* Docket 1-7 at 2; Docket 11-1 at 7 ("The regulations removed the requirement that a person obtain an endorsement to transport within the state a processed industrial hemp product intended for human or animal consumption."); Docket 1-2 at 15 (deleting language in brackets, "transported in the state or").  *See also* Pub. L. No. 115-334, § 10114, 132 Stat. at 4914.

⁵⁸ *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1281 (9th Cir. 2021) (quoting *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021)); U.S. Const. amend. V (". . . nor shall private property be taken for public use, without just compensation.").  *See also Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 247 (1897) (applying the Takings Clause to States through the Fourteenth Amendment).

⁵⁹ *CDK Glob.*, 16 F.4th at 1281 (first quoting *Cedar Point Nursery*, 141 S. Ct. at 2072; and then

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 13 of 18

Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 13 of 18

a regulatory taking has occurred entails an 'ad hoc, factual inquir[y]' into (1) '[t]he economic impact of the regulation on the [property owner],' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action.'"[60]

Plaintiffs contend that they "stand to lose all economically beneficial uses of their property because there is a significant risk that the state deems all hemp products as intended for human consumption."[61] They assert that they "will be unable to sell or transfer hemp without breaking federal law."[62] They further maintain that they have "approximately $2 million worth of hemp products," and that if the Alaska DNR destroys these products or removes their endorsements, then "the DNR will have committed a taking."[63]

First, Plaintiffs have not alleged that any physical appropriation of their hemp products has occurred or is likely to imminently occur before this case is determined on the merits. To the contrary, the State maintains that the amended regulations "do not compel the surrender of the [products], and there is no physical invasion or restraint upon them."[64] Second, Plaintiffs bring forth conclusory

---

citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)).

[60] *Id.* at 1282 (alterations in original) (quoting *Penn Cent.*, 438 U.S. at 124).

[61] Docket 7 at 11 (internal quotation marks omitted).

[62] Docket 7 at 11.

[63] Docket 7 at 11.

[64] Docket 11-1 at 15 (quoting *Andrus v. Allard*, 444 U.S. 51, 65 (1979)).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 14 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 14 of 18

arguments and do not explain why, under the three-factor test in *Penn Central*, a regulatory taking has occurred. While it is true that Plaintiffs can no longer sell hemp products containing delta-9-THC intended for human or animal consumption in Alaska, they do not detail why they cannot sell their products to consumers in the many other states that currently permit the sale of such products. Thus, they have not explained in sufficient detail what economic impact the amended regulations makes on them.[65] Neither have Plaintiffs explained "the extent to which the regulation has interfered with distinct investment-backed expectations."[66] The "character of the governmental action" here is that the in-state sale of hemp products containing delta-9-THC intended for human or animal consumption is prohibited.[67] Based on the evidence, it appears that the governmental action is more aptly characterized as "adjusting the benefits and burdens of economic life to promote the common good" rather than "a physical invasion by [the] government."[68] While the State contends that the "regulations are aimed at targeting a bona fide public health concern: the easy availability of any product that contains delta-9-THC or a non-naturally occurring cannabinoid to a person under 21 years-of-age,"[69] Plaintiffs did not respond to the State's characterization of this

---

[65] *See Penn Cent.*, 438 U.S. at 124 (citation omitted).

[66] *Id.* (citation omitted).

[67] *Id.*

[68] *See id.* (citation omitted).

[69] Docket 11-1 at 11.

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 15 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 15 of 18

governmental action. Thus, Plaintiffs have not shown that they are likely to succeed on their claim that the State's amended regulations constitute an unconstitutional regulatory taking.

## IV. Vagueness

Lastly, Plaintiffs contend that the new regulations are unconstitutionally vague.[70] In evaluating whether a law is vague, courts consider whether the law "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."[71] Further, the law "must provide explicit standards for those who apply them" in order to prevent "arbitrary and discriminatory enforcement."[72] However, these standards are not "mechanically applied," and the "degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."[73]

> Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.[74]

---

[70] Docket 7 at 12.

[71] *Vill. of Hoffman Ests. v. The Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982) (citation omitted).

[72] *Id.* (citation omitted).

[73] *Id.*

[74] *Id.*

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 16 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 16 of 18

Here, while Plaintiffs assert that the amended industrial hemp regulations are unconstitutionally vague, they "do not identify any text or particular section that is difficult to understand"; nor do they identify how any part of the amended regulations is susceptible to alternate interpretations.[75] Rather, they list generic legal procedural questions for which they provide no answers.[76] In addition, Plaintiffs primarily consist of businesses,[77] which "can be expected to consult relevant legislation in advance of action."[78] Prior to the amended regulations taking effect, the Alaska DNR issued a "Notice of Proposed Changes" to those regulations and sought public comment.[79] Plaintiffs, who engage in a "regulated enterprise," had the "ability to clarify the meaning of the regulation[s] by its own inquiry," but they have not shown here either that they attempted to do so or why they failed to do so.[80] For these reasons, Plaintiffs have not shown a likelihood of success on the merits for their claim that the amended regulations are unconstitutionally vague.

---

[75] *See* Docket 11-1 at 16; *see generally* Docket 7 at 12-14.

[76] *See* Docket 7 at 13-14 ("If a producer's hemp products are declared a public nuisance, based upon no acts that he took, what is the appeal procedure? If he refuses to permit his property to be destroyed, could he face jail[?] If the producer has their registry from the hemp program removed, does it entail that all of the products in their possession create criminal liability?").

[77] From the original complaint, it appears that four of the five plaintiffs in the case at that time are businesses, and the remaining original plaintiff is a trade association. *See* Docket 1 at ¶¶ 5-9.

[78] *Vill. of Hoffman Ests.*, 455 U.S. at 498.

[79] Docket 1-7 at 1-3.

[80] *See Vill. of Hoffman Ests.*, 455 U.S. at 498.

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 17 of 18

As Plaintiffs have not demonstrated that they are likely to succeed on the merits of their case for any of their claims, the Court need not and does not reach the other three *Winter* requirements necessary to obtain preliminary injunctive relief.

**CONCLUSION**

In light of the foregoing, IT IS ORDERED that Plaintiffs' Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction at Docket 4 is DENIED. However, the denial is without prejudice to its renewal. Plaintiffs have now filed an amended complaint and may have amassed additional evidence and legal argument that could address some of the legal deficiencies identified herein.[81]

DATED this 27th day of December, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[81] *See* Docket 14 (Am. Complaint).

Case No. 3:23-cv-00253-SLG, *AK Hemp Industrial Ass'n, et al. v. AK DNR, et al.*
Order re Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction
Page 18 of 18
Case 3:23-cv-00253-SLG   Document 20   Filed 12/27/23   Page 18 of 18