TREG TAYLOR
ATTORNEY GENERAL

Kevin A. Higgins (Alaska Bar No. 0711104)
Assistant Attorney General
Alaska Department of Law
PO Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2520
Email: kevin.higgins@alaska.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ALASKA INDUSTRIAL HEMP ASSOCIATION, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES, *et al.* | ) ) ) | Case No.: 3:23-cv-00253-KFR |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Defendants, through counsel at the Alaska Department of Law, move for

summary judgment on all claims in this matter. There are no genuine disputes of fact

material to the issues raised in the amended complaint[1] and the Defendants are entitled to judgment as a matter of law.

## I.  BACKGROUND

This case is about State of Alaska's efforts to prohibit the sale of certain industrial hemp products intended for human or animal consumption. Industrial hemp is an agricultural commodity[2] that derives from different parts of the plant species *Cannabis sativa* in the Linnaean system of botanical classification (cannabis).[3] Marijuana is a genetically distinct form of cannabis that is distinguished by its use, chemical composition, and the cultivation practices used in its production.[4] For nearly 80 years, all cannabis was heavily regulated, taxed, or prohibited as marijuana.[5] But in 2018, Congress

---

[1]    Docket 14.

[2]    AS 03.05.076(a); U.S. Department of Agriculture, Agriculture Marketing Service, Final Rule, Establishment of a Domestic Hemp Production Program, 86 Fed. Reg. 5596 (Jan. 19, 2021) (2021 Final Rule). Johnson, Hemp as an Agricultural Commodity, Congressional Research Service (June 22, 2018), available at https://fas.org/sgp/crs/misc/RL32725.pdf (last accessed September 24, 2024).

[3]    *New Hampshire Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 3 (1st Cir. 2000) (holding that industrial hemp products were considered "marihuana" under federal criminal law).

[4]    Johnson, Defining Hemp: A Fact Sheet, Congressional Research Service (March 22, 2019) available at https://crsreports.congress.gov/product/pdf/R/R44742 (last accessed September 24, 2024).

[5]    *See e.g.*, sec. 1, ch. 62, L 1923 (codified as in the Compiled Laws of Alaska 1933, sec. 1270–1276); Marihuana Tax Act of 1937, Pub. L. 75-238, ch. 553, (Aug. 2, 1937), 50 Stat. 551, 26 U.S.C. § 4741, repealed by Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. 91-513, tit. III, 1101(b)(3)(A) (Controlled Substances Act); Alaska Uniform Narcotic Drug Act, ch. 6 SLA 1943; Controlled Substances Act, Pub. L. 91-513, sec. 101, 84 Stat. 1236, 21 U.S.C. §§ 801–904; Alaska act related to controlled

---

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                                    Page 2 of 28

enacted the Agricultural Improvement Act (2018 Farm Act),[6] which, in relevant part,

legalized hemp production.[7] The 2018 Farm Act defined "hemp" for purposes of hemp

production as

> the plant Cannabis sativa L. and any part of that plant,
> including the seeds thereof and all derivatives, extracts,
> cannabinoids, isomers, acids, salts, and salts of isomers,
> whether growing or not, with a delta-9-tetrahydracannabinol
> concentration of not more than 0.3 percent on a dry weight
> basis."[8]

Delta-9-tetrahydracannabinol (delta-9-THC) is the primary psychoactive compound in

the cannabis plant, and the concentration of it is the legally defining characteristic

between hemp (not more than .3 percent delta-9-THC on a dry weight basis) and

marijuana (more than .3 percent delta-9-THC on a dry weight basis). [9] Accordingly, the

---

substances ch. 45 SLA 1982. *See also* 86 Fed. Reg. 5596 (Before 2018, "all Cannabis
sativa L., regardless of delta-9[-THC] concentration level, fell within the [Controlled
Substances Act] definition of 'marihuana' unless the product fell under a narrow range of
exceptions (e.g., the 'mature stalks' of the plant). As a result, many aspects of domestic
production of what is now defined as hemp was limited to persons registered [Controlled
Substances Act] to do so.").

[6]     Pub. L. No. 115-334, 132 Stat. 4490–5018 (2018).

[7]     Pub. L. No. 115-334 § 10113–10114, 132 Stat. 4908–4914 (codified at
7 U.S.C. § 1639o–s). All further citations to the 2018 Farm Act will cite to the United
States Code. Additionally, the terms "industrial hemp" and "hemp" are used
interchangeably throughout this motion.

[8]     7 U.S.C. § 1639o(1).

[9]     2021 Final Rule, 86 Fed. Reg. at 5597, 5614, 5649, 5682.  Johnson, Defining
Hemp: A Fact Sheet, at 3, 5–7.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                              Page 3 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 3 of 28

2018 Farm Act excludes hemp from the definition of marijuana under the Controlled Substances Act.[10]

The 2018 Farm Act authorized a State to take "primary regulatory authority over the production of hemp," if it submitted a hemp regulation plan to the U.S. Department of Agriculture (USDA)[11] that met certain minimum requirements.[12] The 2018 Farm Act also expressly provides that nothing in it "preempts or limits any law of a State . . . that (i) regulates the production of hemp; and (ii) is more stringent than this subchapter."[13] But a State may not "prohibit the transportation or shipment of hemp or hemp products . . . through the State . . . ."[14]

In 2021, Alaska's hemp-related statutes were amended to define "industrial hemp" in a manner consistent with the definition of "hemp" in the 2018 Farm Act[15] and to

---

[10] 21 U.S.C. §§ 802(16), 812.

[11] 7 U.S.C. § 1639p(a)(1).

[12] *See* 7 U.S.C. § 1639p(a)(2) (minimum requirements include a procedure to maintain certain information regarding the land hemp is grown on; a testing procedure for the delta-9-THC concentration levels of hemp produced; a procedure for disposal of non-compliant plants and products; inspection and enforcement procedures; procedures for reporting information to the USDA; and a certification that the state has the resources and personnel to carry out the minimum requirements of the plan.). In the absence of an approved state-plan, the production of hemp would be regulated under a plan approved by the USDA Secretary. *See* 7 U.S.C. 1639(q).

[13] 7 U.S.C. § 1639p(a)(3).

[14] 7 U.S.C. § 1639o note.

[15] Sec. 8, ch. 32, SLA 2021; AS 03.05.100(5). In 2018, the Alaska Legislature had enacted ch. 5 SLA 2018 to authorize an industrial hemp pilot program consistent with the Agricultural Act of 2014, Pub. L. 113-79, § 7606, 128 Stat. 649, 912–913 (codified at 7 U.S.C. 5940 *repealed by* Pub. L. 115–334 § 7606 (*see* 7 U.S.C. 5940 note). In part, the

---

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*  3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment  Page 4 of 28

permit the Department of Natural Resources (DNR) to develop a state plan to submit to the USDA for approval.[16] Alaska submitted its plan to the USDA on December 28, 2021, and it took effect on January 1, 2022.[17]

As centrally relevant to this case, Alaska's regulations require a person to obtain an endorsement from DNR's Division of Agriculture before offering hemp products that are intended for human or animal consumption to a consumer in the state.[18] The initial regulations also provided that "[a] processed industrial hemp product intended for human or animal consumption may not contain more than 50 milligrams of delta-9-THC per individual product."[19] This proved to be problematic, in part, because industrial hemp products are available for purchase without regard to the age of the consumer.[20]

---

2014 Farm Act permitted an institution of higher education or a state department of agriculture to grow or cultivate "industrial hemp" for purposes of research under an agricultural pilot program authorized under the state law in which the program operated.

[16]     AS 03.05.076(i).

[17]     Alaska Department of Natural Resources, Division of Agriculture, USDA Industrial Hemp Program, Alaska State Plan, available at https://www.ams.usda.gov/sites/default/files/media/AlaskaStateIndustrialHempPlan.pdf (last accessed Nov. 16, 2023).

[18]     11 AAC 40.400(a) (2020) ("Before being transported in the state or offered with or without compensation to a consumer, any industrial hemp product processed beyond its raw form and intended for human or animal consumption must be endorsed.").

[19]     11 AAC 40.415 (2020).

[20]     *See* Exhibit A, Coordinated Response to Hemp Based Delta-9 Edible Products, (October 21, 2022); Exhibit B, Governor's Advisory Task Force on Recreational Marijuana, Report on Alaska Cannabis Tax Reform; Regulating Intentionally Intoxicating Hemp and Tetrahydrocannabinol Products and Recommendations for Industry Improvement, Viability and Parity, at 4–6 (Jan. 13, 2023).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment     Page 5 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 5 of 28

In June 2023, DNR published notice of proposed changes to its industrial hemp regulations and of the opportunity for the public to comment on the proposed changes until July 14, 2023.[21] The proposed amendments to the regulations removed the requirement that a person obtain an endorsement to transport within the state a processed industrial hemp product intended for human or animal consumption.[22] But the proposed amendments provided that the Division of Agriculture "may not endorse an industrial hemp product that contains delta-9-THC or a non-naturally occurring cannabinoid, including a cannabinoid made from an ingredient extracted from industrial hemp and modified beyond its original form."[23]

Members of the public submitted comment on the proposed regulation. For example, Danny Ferguson, who owns Primo Farms North, LLC, submitted multiple comments by email.[24] Mr. Ferguson question what motivated the proposed amendments, who proposed them, and how much taxpayer money was spent to develop them; he estimated that the proposed amendments would eliminate 90 to 95 percent of all hemp

---

[21]     Exhibit C, Notices of Proposed Changes on Industrial Hemp Program In the Regulations of the Department of Natural Resources. The notice was signed on May 23, 2023, published on the Alaska Online Public Notice System on June 08, 2023, and published in the Anchorage Daily News on June 11, 2023.

[22]     Exhibit G, Complete packet of Nov. 3, 2023 amendments to 11 AAC 40, at 17 (amending 11 AAC 40.400(a)).

[23]     *Id.* (amending 11 AAC 40.400(d))

[24]     Exhibit D, emails from Danny Ferguson to DNR sponsored email address for Alaska Industrial Hemp Program; Exhibit F, Condensed transcript of deposition of Danny Ferguson continued July 25, 2024, at 7–12.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment     Page 6 of 28

Case 3:23-cv-00253-KFR     Document 32     Filed 09/25/24     Page 6 of 28

products in Alaska, including products with trace amounts of delta-9-THC; and he accused DNR of colluding with the Alcohol and Marijuana Control Office (AMCO) to destroy the hemp industry while benefiting the adult-use marijuana industry.[25]

The amendments were adopted on September 23, 2023.[26] The Lieutenant Governor, through a delegation to a regulations and initiative specialist, accepted, endorsed, and filed the regulations on October 4, 2024.[27] In a media advisory announcing the adoption and filing, DNR Commissioner John C. Boyle, III, stated that "[t]hese revised industrial hemp rules increase safety for Alaskan children and protections for the regulated cannabis industry in our state. . . . The Industrial Hemp Program was never intended to allow intoxicating products, which are rightfully regulated for the recreational market in Alaska by the Alcohol & Marijuana Control Office."[28] The amendments to the hemp regulations became effective on November 3, 2024.[29]

---

[25]    *Id*. State employees at AMCO serve as the staff for the Marijuana Control Board, which is the quasi-judicial agency that regulates the cultivation, manufacturing, testing, and retail sale of marijuana in Alaska. *See generally* AS 17.38, 3 AAC 306.

[26]    Exhibit G, at 4.

[27]    *Id*. at 4–5.

[28]    Exhibit H, at 1, DNR Media Advisory Oct. 5, 2023.

[29]    AS 44.62.180 ("A regulation filed by the lieutenant becomes effective on the 30th day after the date of filing . . . .")

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                    Page 7 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 7 of 28

C.    **The Plaintiffs' Amended Complaint.**

The Plaintiffs filed the complaint in this case on November 2, 2023,[30] and filed an amended complaint on November 24, 2023.[31] Plaintiffs allege that the amendments to the hemp regulations violate the Supremacy Clause, the dormant Commerce Clause, the Takings Clause, and, because they are unconstitutionally vague, the Due Process Clause.[32] The Plaintiffs request declaratory judgment, a permanent injunction to prevent the enforcement of the amendments to the hemp regulations, attorneys' fees and costs incurred in bringing the action, and "all other just and proper relief."[33]

Although the amended complaint names various organizations and individuals as plaintiffs, Primo Farms North, LLC, which is owned solely by Danny Ferguson,[34] is the only Plaintiff that is still participating in this case.[35] Primo Farms North, LLC, doing business as Primo, currently is a registered retailer in the Alaska Industrial Hemp

---

[30]    Docket 1.

[31]    Docket 14.

[32]    *Id*. at 51.

[33]    *Id*. at 51–52.

[34]    Exhibit I, Articles of organization, initial report, and recent business licenses filed with the Alaska Department of Commerce, Community, and Economic Development, Division of Corporations, Business and Professional Licensing.

[35]    Exhibit E, Condensed transcript of deposition of Danny Ferguson, July 11, 2024, at 4–5, 15.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*    3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment    Page 8 of 28

Case 3:23-cv-00253-KFR    Document 32    Filed 09/25/24    Page 8 of 28

Program and also is the owner of a retail marijuana store in Anchorage.[36] Primo had

hemp products intended for human or animal consumption that contained delta-9-THC in

stock when notice of the proposed amendments to the hemp regulations was published

and thereafter tapered off its purchases, which continued until at least a month after the

amendments became effective.[37] According to Mr. Ferguson, Primo gave away a

significant portion of its inventory; at one point he "even gave away 1,000 milligrams of

[delta-9-THC] edibles each day for a month to get people in the store."[38] But Primo

stopped doing that because "giving them away will obviously give [the Defendants] an

angle to say I gave them away and [the State is] not going to pay for it. So they're aging

in my garage, uselessly."[39]

The amended complaint names the following defendants: the State of Alaska (the

State), the Department of Natural Resources (DNR), John C. Boyle III, the Commissioner

of the DNR, the Division of Agriculture, Bryan Scoresby in his official capacity as the

director of the Division of Agriculture, and Nancy Dahlstrom, in her official capacity as

the Lieutenant Governor of the State.[40] Commissioner Boyle, as the principal executive

---

[36]     Exhibit J, Alaska Industrial Hemp Program retailer registration 21-3R-0126 and recent renewal; Exhibit K, Marijuana Control Board license 24383 and recent renewal; Exhibit E, at 2–3.

[37]     Exhibit E, at 13; Exhibit F, at 4–7, 14; Exhibit L, invoices for wholesale purchases of hemp products; Exhibit M, Mr. Ferguson's list of inventory as of July 2024.

[38]     Exhibit E, at 6.

[39]     Exhibit F, at 14.

[40]     AS 44.19.020.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                                    Page 9 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 9 of 28

officer of DNR, has the power and duty to adopt regulations relating industrial hemp, and

he signed the order adopting the amendments to the hemp regulations in this case. [41] The

Division of Agriculture is the administrative unit within DNR that has primary

responsibility for administering the Alaska Industrial Hemp Program,[42] and Director

Scoresby is the primary public officer within the division.[43] The Lieutenant Governor is

responsible for reviewing, accepting for filing, and endorsing the regulations submitted

by a state agency.[44] Except for the authority to codify, publish, and distribute the Alaska

Administrative Code, the Lieutenant Governor has no authority to adopt, administer, or

enforce the regulation of another state agency.[45]

     The first count of the complaint alleges that the amendments to the hemp

regulations violate the Supremacy Clause.[46] According the Plaintiffs, the amended hemp

regulations "plainly contradict the language and purpose" of the 2018 Farm Act because

they prohibit the in-state sale of any hemp product intended for human or animal

---

[41]     Exhibit G at 4. Docket 14 at 14–15. *See* Alaska Const., art. III, §§ 25 (principal departments of executive branch and department heads); AS 03.05.010(a)(7) (authority to adopt regulations), AS 03.05.076 (powers and duties related to industrial hemp), AS 44.17.005(10) (DNR is a principal department),AS 44.17.010 (principal executive officer may assign functions), AS 44.37.010 (principal executive officer of DNR is the commissioner of natural resources)

[42]     11 AAC 40.910(1), (16), and (18).

[43]     Docket 14 at 14–15.

[44]     AS 44.62.010–.125.

[45]     AS 44.62.020.

[46]     Docket 14, at 35–36, ¶¶ 121–131.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment     Page 10 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 10 of 28

consumption if it contains delta-9-THC or a non-naturally occurring cannabinoid.[47] The Plaintiffs allege that DNR and Commissioner Boyle have a duty to "substantially follow the plan approved by the USDA, which included the prior regulations" that did not prohibit hemp the in-state sale of such hemp products.[48] But, according to Plaintiffs, the Commissioner adopted regulations that prohibit such hemp products, which put the Alaska Industrial Hemp Plan out of compliance with its USDA-approved plan and in conflict with the 2018 Farm Act.[49]

The second count of the complaint alleges that the amended hemp regulations violate the dormant Commerce Clause.[50] According to the Plaintiffs, the amended hemp regulations discriminate against interstate commerce in hemp in favor of the in-state adult-use marijuana industry.[51] Plaintiffs argue that this discrimination results because hemp and marijuana both can be used to make products intended for consumption that contain delta-9-THC, but the regulations ban those products if they are derived from hemp while other Alaska law permits those products if they are derived from marijuana, which is federally illegal.[52] According to the Plaintiffs, "[t]he DNR Commissioner's

---

[47]    *Id*. at 35–36, ¶¶ 122–123, 130.

[48]    *Id*. at ¶¶ 122–126.

[49]    *Id*. at ¶¶ 122–131.

[50]    Docket 20 at 36–40, ¶¶ 134–148.

[51]    *Id*. *See* 3 AAC 306.015(b) (residency requirement to obtain a marijuana establishment license).

[52]    *Id*. at 37, ¶ 136.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                                  Page 11 of 28
Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 11 of 28

statements" that the amendments to the hemp regulations increase protections for the regulated cannabis industry in Alaska and that cannabis-derived intoxicating products are rightfully regulated as adult-use marijuana in Alaska "evidence intent to protect the Federally illegal marijuana industry to the detriment of the legal hemp industry."[53] The Plaintiffs further argue that the State could have satisfied safety concerns regarding children's access to hemp products by adopting "regulations pertaining [to] purchase age," which would have been less restrictive than banning the products.[54] Plaintiffs argue that the amended hemp regulations "have excessive and negative effects on interstate commerce that excessively burden the hemp industry, whilst carving out a safe haven of non-competition for the marijuana industry" and therefore "are unconstitutional in violation of dormant commerce clause principles."[55]

The third count of the complaint alleges that the amended hemp regulations violate the Takings Clause.[56] According to Plaintiffs, the "complete prohibition of the sale of hemp products that contain delta-9-THC infringes upon the investment-backed expectations and industries [that] plaintiffs . . . have come to rely on . . . [, which]

---

[53]     *Id*. at 36–40, ¶¶ 134, 140.

[54]     *Id*. at 40, ¶¶ 146–147

[55]     *Id*. at ¶ 148.

[56]     *Id*. at 40–43, ¶¶ 152–161.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*      3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                              Page 12 of 28

Case 3:23-cv-00253-KFR    Document 32    Filed 09/25/24    Page 12 of 28

amounts to a deprivation of all, or substantially all, beneficial economic use of [P]laintiff's hemp-derived products, lines of business, and goodwill . . . ."[57]

The fourth count alleges that the amended hemp regulations violate the Due Process Clause because they are too vague.[58] According to Plaintiffs, the amended hemp regulations "create substantial confusion for registered hemp cultivators, processors, and retailers within the state regarding their federally legal commodities."[59] The Plaintiffs do not understand how DNR could adopt the amended hemp regulations because hemp is not a controlled substance at the state or federal level.[60] The Plaintiffs argue that some of their confusion stems from DNR's media advisory that explained the amended regulations would make "it illegal for growers, manufacturers and retailers in Alaska to sell industrial hemp products containing delta-9 THC intended for human or animal consumption."[61] Plaintiffs also argue that the word "may" is ambiguous in sections of the hemp regulations relating to what the Division of Agriculture may or may not do.[62] According to Plaintiffs, the amended hemp regulations "are silent and provide registrants

---

[57]     *Id*. at 42, ¶ 160.

[58]     *Id*. at 43–48, ¶¶ 163–183.

[59]     *Id*. at 43, ¶ 164.

[60]     *Id*. at 43–44, ¶¶ 165–167.

[61]     *Id*. at 44, ¶ 168.

[62]     *Id*. at 45, ¶ 170 (citing 11 AAC 40.400(d) and 11 AAC 40.800(5)–(6)).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                                          Page 13 of 28

Case 3:23-cv-00253-KFR    Document 32    Filed 09/25/24    Page 13 of 28

and the public zero guidance regarding the criminality of hemp possession" and "the immediate impact on Alaska hemp registry holders remains unclear . . . ."[63]

## II. APPLICABLE LAW

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[64] Substantive law identifies which facts are material, and only disputes regarding facts that might affect the outcome of a claim or defense may preclude the entry of summary judgment.[65] When the nonmoving party bears the burden of proof at trial on a dispositive issue, the moving party does not need to present any evidence but needs only to point out the lack of a genuine dispute as to a material fact.[66] After the moving party makes this showing, the burden shifts to the nonmoving party to present evidence of specific facts that show a genuine issue for trial.[67] There is no issue for trial unless the nonmoving party provides sufficient evidence that a jury could return a verdict in its favor.[68]

---

[63] *Id*. at 47–48, ¶¶ 181–183.

[64] Fed. R. Civ. P. 56(a).

[65] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

[66] *Celotex Corp.. v. Catrett*, 477 U.S. 317, 325 (1986).

[67] *Anderson*, 477 U.S. at 256.

[68] *Id*. at 249–50.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                                    Page 14 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 14 of 28

### A. The Eleventh Amendment prohibits a suit by an individual against a non-consenting state.

The Eleventh Amendment prohibits a federal court from hearing a suit against a state without the consent of that state.[69] But, under the doctrine of *Ex parte Young*,[70] this prohibition does not apply to a suit that seeks only injunctive relief against a state official who would implement a state law that allegedly is inconsistent with federal law.[71] Still, this exception to the Eleventh Amendment does not apply to all actions that seek prospective relief against a state official.[72] Rather, the "officer must have some connection with the enforcement of the act," because the suit otherwise would be a prohibited suit against the state.[73]

---

[69]   U.S. Const. amend XI (""The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *See generally Hans v. Louisiana,* 134 U.S. 1 (1890) (holding that a suit directly against a state by one of its own citizens is prohibited by the Eleventh Amendment, unless the state consents to be sued).

[70]   209 U.S. 123 (1908).

[71]   *Ex parte Young,* 209 U.S. at 159–60.

[72]   *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1072 (9th Cir. 2014) (citing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997)).

[73]   *Ex parte Young*, at 157 ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                              Page 15 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 15 of 28

**B.**     **The Supremacy Clause prohibits the enforcement of a state law that interferes with or is contrary to a federal law.**

The Supremacy Clause of the U.S. Constitution[74] is the source of the preemption doctrine, which provides that a state law is void when it interferes with or is contrary to federal law.[75] The "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole."[76] The starting point for this consideration is "the basic assumption that Congress did not intend to displace state law."[77] Therefore, in the absence of an express intent to preempt, a state law will be void only if it conflicts with a federal law such that "compliance with both federal and state regulations is a physical impossibility,"[78] or the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[79]

---

[74]     U.S. Const. art. VI, cl. 2 ("the Laws of the United States . . . shall be the supreme Law of the Land . . . [the] Law of any State to the Contrary notwithstanding.")

[75]     *Maryland v. Louisiana*, 451 U.S. 725, 748 (1981.

[76]     *Gade*, 505 U.S. at 98.

[77]     *Maryland v. Louisiana*, 451 U.S. at 748.

[78]     *Id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963)).

[79]     *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment     Page 16 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 16 of 28

**C.** **The dormant Commerce Clause prohibits enforcement of some state laws that benefit in-state economic interests by burdening out-of-state competitors.**

The Commerce Clause of U.S. Constitution vests Congress with the power to "regulate Commerce . . . among the several States."[80] This clause is "an affirmative grant of power to Congress to regulate interstate and foreign commerce, but it has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce."[81] Its negative implication—the dormant Commerce Clause—prohibits the enforcement of state laws that amount to "economic protectionism," which include "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."[82] A state law may be found to be "economic protectionism" based on either its discriminatory purpose or discriminatory effect.[83] But "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the States."[84] For example, a bona fide safety regulations carries "a strong presumption of validity."[85]

---

[80]     U.S. Const, art. I, § 8, cl. 3.

[81]     *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (quoting *South–Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984)).

[82]     *Id.* at 1147–48 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–338 (2008)).

[83]     *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984).

[84]     *Id.* at 1148 (quoting *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)).

[85]     *Kassel v. Consol. Freightways Corp. of Delaware*, 450 U.S. 662, 670 (1981).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment          Page 17 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 17 of 28

**D.** **The Takings Clause prohibits a government from taking private property for public use without just compensation.**

The Takings Clause of the Fifth Amendment provides that "private property [may not] be taken for public use without just compensation."[86] There are two types of governmental action that may give rise to a claim under the Takings Clause. The first, a "*per se* taking," occurs when the government carries out a physical appropriation of property.[87] The second type of taking, a "regulatory taking," occurs when the government imposes regulations that are so burdensome that they amount to a taking.[88]

Determining whether a regulation is so burdensome that it amounts to a taking is determined by an "ad hoc, factual inquir[y], designed to allow careful examination and weighing of all the relevant circumstances."[89] Significant factors for consideration include "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations."[90] Further, "[a]s a general matter, 'in the case of personal property, by reason of the State's traditionally high degree

---

[86]     U.S. Const. amend. V; *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021) ("The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation.").

[87]     *Cedar Point Nursery*, at 147–48.

[88]     *Id*. at 148.

[89]     *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017).

[90]     *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984) (quoting *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 83 (1980)); *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1282 (9th Cir. 2021).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment     Page 18 of 28
Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 18 of 28

of control over commercial dealings, a property owner ought to be aware of the possibility that new regulation might even render his property economically worthless.'"[91]

### E. The Due Process Clause prohibits the enforcement of vague laws that do not provide fair warning of what is prohibited.

Because "[v]ague laws may trap the innocent by not providing fair warning" the Due Process Clause of the Fifth and Fourteenth Amendments requires that a law give "a person of ordinary intelligence a reasonable opportunity to know what is prohibited."[92] But due process does not require that "a plaintiff actually receive a warning that alerted him or her to the danger of being held accountable for the behavior in question."[93] Additionally, "an economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."[94]

## III. ARGUMENT

There are no genuine disputes of facts material to any issue raised in any of the Plaintiffs' claims. The State, DNR, Division of Agriculture, and Lieutenant Governor are

---

[91]    *Brnovich*, 16 F.4th at 1282 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027–28 (1992).

[92]    *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

[93]    *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019).

[94]    *Vill. of Hoffman Ests.* at 498.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                              Page 19 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 19 of 28

entitled to judgment as a matter of law because the Eleventh Amendment prohibits a suit against them. Further, the amended hemp regulations are consistent with the 2018 Farm Act, do not violate the dormant Commerce Clause, do not amount to a regulatory taking, and are not unconstitutionally vague. Therefore, the Court should grant this motion for summary judgment in favor of the Defendants.

## A. The Eleventh Amendment prohibits a suit against the State, DNR, Division of Agriculture, and Lieutenant Governor.

The Eleventh Amendment prohibits a suit against the State, DNR, Division of Agriculture, and Lieutenant Governor. The DNR is one of the principal departments of the State of Alaska,[95] and the Division of Agriculture is an administrative unit within DNR.[96] The State has not consented to this suit, and it is clearly contrary to the plain language and longstanding interpretation of the Eleventh Amendment.[97] Additionally, the Lieutenant Governor is responsible for reviewing, accepting for filing, and endorsing the regulations submitted by a state agency.[98] Even though this suit seeks injunctive relief, the Lieutenant Governor has no authority to administer or enforce the hemp regulations.[99]

---

[95]     *See* Alaska Const., art. III, §§ 22 (principal departments of executive branch); 44.17.005(10) (DNR is a principal department).

[96]     *See* AS 44.17.020 (principal executive officer of each department may establish divisions within the department); *see also* 11 AAC 40.910(1), (16), and (18) (defining the Division of Agriculture within the Department of Natural Resources as the administrator of the Alaska Industrial Hemp Program).

[97]     U.S. Const, amend XI; *Hans v. Louisiana,* 134 U.S. 1 (1890).

[98]     AS 44.62.010–.125.

[99]     AS 44.62.020.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*      3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                              Page 20 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 20 of 28

Therefore, the *Ex parte Young* doctrine does not apply and the suit against the Lieutenant Governor also is prohibited by the Eleventh Amendment.[100]

**B.      The amended hemp regulations are consistent with and not pre-empted by the 2018 Farm Act.**

The amended hemp regulations are consistent with and not preempted by the 2018 Farm Act. The Plaintiffs argue that the amended hemp regulations "plainly contradict the language and purpose" of the 2018 Farm Act because they prohibit the in-state sale of any hemp product intended for human or animal consumption if it contains delta-9-THC or a non-naturally occurring cannabinoid.[101] This argument ignores the text of 2018 Farm Act, which contains express provisions regarding preemption.

The 2018 Farm Act expressly provides that "[n]othing in this subsection preempts or limits any law of a State . . . that—(i) regulates the production of hemp; and (ii) is more stringent than this subchapter."[102] But it also expressly provides that "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products through the State," if those products are produced in compliance with the approved hemp plan of another State, Tribal government, or the USDA.[103] Thus, the 2018 Farm Act expressly

---

[100]      *Ex parte Young*, at 157.

[101]      *Id*. at 35–36, ¶¶ 122–123, 130.

[102]      7 U.S.C. 1639p(a)(3)(A).

[103]      7 U.S.C. § 1639o note. *See C.Y. Wholesale, Inc. v. Holcomb,* 965 F.3d 541, 549 (7th Cir. 2020) ("It may well be that Indiana, in proscribing the possession of industrial hemp, has illegally prohibited the transportation of interstate shipments of industrial hemp.").

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                          Page 21 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 21 of 28

preempts any state law that prohibits interstate shipments of hemp, but it also expressly disavows any intent to preempt a state law that is more stringent than the 2018 Farm Act.

The amended hemp regulations are more stringent that the federal law because they prohibit a registered retailer from offering to a consumer in the state any industrial hemp product intended for human consumption that contains delta-9-THC. But the amended regulations also permit the transportation of such products in the state without an endorsement.[104] This is entirely consistent with the 2018 Farm Act.

Further, nothing in the 2018 Farm Act requires the Defendants to follow the entire USDA-approved plan unless and until the USDA approves an amendment to that plan. The Plaintiffs argue that the Defendants have a duty to "substantially follow the plan approved by the USDA," which permits the in-state sale of hemp products intended for consumption that contain delta-9-THC.[105] According to Plaintiffs, the amended regulations place the Alaska Industrial Hemp Program out of compliance with its USDA-approved plan and in conflict with the 2018 Farm Act.[106] But the 2018 Farm Act only requires a state plan to include a procedure to maintain certain information regarding the land hemp is grown on, a testing procedure for the delta-9-THC concentration levels of hemp produced, a procedure for disposal of non-compliant plants and products,

---

[104]    Exhibit G, at 17 (deleting language from 11 AAC 40.400(a) that required an endorsement to transport within the state a hemp product intended for consumption).

[105]    Docket 14, at 35 ¶¶ 122–126.

[106]    *Id*. at ¶¶ 122–131.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*      3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                               Page 22 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 22 of 28

inspection and enforcement procedures, procedures for reporting information to the

USDA, and a certification that the state has the resources and personnel to carry out the

minimum requirements of the plan.[107] The amendments to the regulation did not alter

these minimum requirements in any substantive way. They do not conflict with the 2018

Farm Act.

C.     **The amended hemp regulations do not violate dormant Commerce Clause because they do not discriminate against out of state competitors.**

The amended hemp regulations do not offend the dormant Commerce Clause

because, regardless of where it is produced, no hemp product intended for human

consumption may be sold to a consumer in Alaska if it contains delta-9-THC or a non-

naturally occurring cannabinoid. Even though hemp and marijuana both can be used to

make products intended for consumption that contain delta-9-THC, the amended

regulations treat in-state and out-of-state hemp retailers of such products the same:

neither may offer such products "to a consumer in the state[.]."[108] And the differential

treatment of the two markets for cannabis in Alaska is justified because there is no

federal market for marijuana because it is federally illegal.[109]

---

[107]     7 U.S.C. § 1639p(a)(2).

[108]     11 AAC 40.400(a), (d).

[109]     *Gonzales v Raich*, 545 U.S. 1, 5 (2005) (the Controlled Substances Act is a valid exercise of congressional power to prohibit the local cultivation and use of marijuana in compliance with state law).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*     3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment     Page 23 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 23 of 28

Additionally, the amended hemp regulations target a bona fide public health concern: the easy availability of any product that contains delta-9-THC or a non-naturally occurring cannabinoid to a person under 21 years-of-age. As such, the regulations carry "a strong presumption of validity[.]"[110] The Plaintiffs incorrectly argue that the State could have satisfied safety concerns regarding children's access to hemp products by adopting "regulations pertaining [to] purchase age," which would have been less restrictive than banning the products.[111] Alaska's hemp-related statutes do not provide any authorization to adopt a regulation that imposes an age-based restriction on the purchase of hemp products.[112]

### D. The amended hemp regulations do not amount to a regulatory taking.

The amended hemp regulations do not amount to an unconstitutional taking. First, the regulations "do not compel the surrender of the [products], and there is no physical invasion or restraint upon them."[113] And there is no evidence that DNR has seized any

---

[110] *Kassel*, 450 U.S. at 670.

[111] *Id*. at 40, ¶¶ 146–147

[112] *See* AS 03.05.010(a)(7) (authorization to adopt hemp regulations regarding hemp seed sources, testing for delta-9-THC concentration after harvest, general production practices to avoid unintended distribution of hemp seeds, isolation distances for production of hemp, manufacturing and retail sale of hemp products, and registration and renewal procedures); AS 03.05.076. *See also Frank v. State*, 97 P.3d 86, 91 (Alaska App. 2004) (a regulation that conflicts with a statute must yield to the statute); *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 543–44 (Alaska 1978) (emergency regulation, which limited a tax credit, conflicted with the relevant statute that provided for the credit but did not mention a limitation).

[113] *Andrus v. Allard*, 444 U.S. 51, at 65–66 (1979).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                                    Page 24 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 24 of 28

private property belonging to any of the Plaintiffs. Thus, this case does not involve a *per se* taking.

Second, these regulations do not amount to a regulatory taking because the Plaintiffs are only prohibited from selling these products to consumers in Alaska.[114] In this way, the economic impact of the regulations is minimized. And there is no evidence that the amended regulations have interfered with any specific investment-backed expectations of any of the Plaintiffs.[115] "In this case, it is crucial that [Plaintiffs] retain the rights to possess and transport their property."[116]

The character of the governmental action here is aimed at addressing the public safety concern posed by the accessibility to minors of hemp products intended for consumption that contain delta-9-THC. The prohibition of the in-state sale of these products is an "interference [that] arises from [the Alaska Industrial Hemp Program] adjusting the benefits and burdens of economic life to promote the common good," and, as such, it should not readily be found to be an unconstitutional taking.[117] This is particularly true because, "[a]s a general matter, in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, a

---

[114]    11 AAC 40.400.

[115]    *Brnovich*, 16 F.4th at 1282.

[116]    *Andrus*, at 66.

[117]    *Penn Cent. Transp. Co.*, 438 U.S. at 124.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                              Page 25 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 25 of 28

property owner ought to be aware of the possibility that new regulation might even render his property economically worthless."[118]

**E.      The amended hemp regulations provide fair warning about what is prohibited.**

The amended hemp regulations are not unduly vague in violation of the Due Process Clause. Plaintiffs argue that the amended hemp regulations "are silent and provide registrants and the public zero guidance regarding the criminality of hemp possession" and that "the immediate impact on Alaska hemp registry holders remains unclear . . . ."[119] But this assertion is contrary to the evidence in this case.

The Plaintiffs are "businesses, which face economic demands to plan behavior carefully, [and] can be expected to consult relevant [law] in advance of action."[120] And, at least for Primo, that is what happened in this case. Before the amended hemp regulations were adopted, Mr. Ferguson repeatedly submitted public comments that demonstrate that he understood the impact of proposed amendments: he would no longer be able to sell hemp products intended for consumption that contain delta-9-THC.[121] And he adjusted his behavior by making fewer wholesale purchases of hemp products after notice of the proposed amendments were published and by offering products to consumers without

---

[118]      *Brnovich*, 16 F.4th at 1282 (internal quotation omitted).

[119]      *Id*. at 47–48, ¶¶ 181–183.

[120]      *Vill. of Hoffman Ests*. at 498.

[121]      Exhibit D; Exhibit F, at 7–12.

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                                    Page 26 of 28

Case 3:23-cv-00253-KFR    Document 32    Filed 09/25/24    Page 26 of 28

compensation to reduce inventory and attract customers.[122] Mr. Ferguson's understanding

is evidence that the amended hemp regulations provide "a person of ordinary intelligence

a reasonable opportunity to know" what is prohibited.[123]

Finally, Plaintiffs argue that the amended hemp regulations are unconstitutionally

vague because the use of the word "may" is ambiguous in 11 AAC 40.400(d) and in

11 AAC 40.800(5)–(6).[124] This argument is without merit. Under 11 AAC 40.400(d),

"[t]he division may not endorse" a hemp product intended for consumption that contains

delta-9-THC. The use of "may not" provides a person of ordinary intelligence a

reasonable opportunity to know that the regulation imposes a prohibition to prevent the

Division of Agriculture from endorsing such a product.[125] Under 11 AAC 40.800, "[t]o

carry out the provisions of this chapter, the division may . . ." engage in various

enforcement actions, including to declare a hemp product for human consumption that

contains delta-9-THC to be a public nuisance[126] or to destroy any such product.[127] The

use of "may" provides a person of ordinary intelligence a reasonable opportunity to know

---

[122]    Exhibit E, at 6, 13; Exhibit F, 25 at 4–7, 14; Exhibit L; Exhibit M.

[123]    *Grayned*, 708 U.S. at 108–09.

[124]    Docket 14 at 45, ¶ 170 (citing 11 AAC 40.400(d) and 11 AAC 40.800(5)–(6)).

[125]    *See* Alaska Department of Law, Drafting Manual for Administrative Regulations, 23rd ed., at 56 (2022) available at https://law.alaska.gov/pdf/manuals/DraftingManual-AdminRegs.pdf (last accessed September 25, 2024).

[126]    11 AAC 40.800(5).

[127]    11 AAC 40.800(6).

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*          3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment                    Page 27 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 27 of 28

that the regulation grants the Division of Agriculture the discretionary power to engage in those enforcement actions. Therefore, the amended hemp regulations provide fair warning about what is prohibited and they are not void for vagueness.

## IV.    CONCLUSION

For the reasons stated above, the Court should award summary judgment in favor of the Defendants.

DATED: September 25, 2024.    TREG TAYLOR
    ATTORNEY GENERAL

By:    /s/Kevin A. Higgins
    Kevin A. Higgins
    Assistant Attorney General
    Alaska Bar No. 0711104
    Alaska Department of Law
    P.O. Box 110300
    Juneau, AK 99811-0300
    Phone: (907) 465-3600
    Email:  kevin.higgins@alaska.gov
    Attorneys for Defendants

**Certificate of Service**
I certify that on September 25, 2024 the foregoing document was served electronically on: Christopher V. Hoke, Hoke Law via the CM/ECF system.

/s/Kevin A. Higgins
Kevin A. Higgins

*Alaska Industrial Hemp Assn., et al. v. State of Alaska, et al.*    3:23-cv-00253-KFR
Defendants' Motion for Summary Judgment    Page 28 of 28

Case 3:23-cv-00253-KFR   Document 32   Filed 09/25/24   Page 28 of 28