IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AK INDUSTRIAL HEMP
ASSOCIATION, INC., *et al.*,

    Plaintiffs,

v.

ALASKA DEPARTMENT OF
NATURAL RESOURCES, *et al.*,

    Defendants.

Case No. 3:23-cv-00253-KFR

**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants.[1] Plaintiffs did not respond to the Motion.[2] Because Defendants have demonstrated that there remain no genuine issues of material fact and they are entitled to judgment as a matter of law on all of Plaintiffs' claims challenging the State of Alaska's 2023 amendments to its industrial hemp regulations, the Motion is **GRANTED**.

**I.    BACKGROUND**[3]

This case is about the State of Alaska's ("State") regulation of industrial hemp products intended for human or animal consumption. Both hemp and marijuana derive from the cannabis plant, *Cannabis sativa L.*[4] Until 2018, the production of hemp and marijuana was

---

[1] Docket 32. Defendants are the State of Alaska; the Alaska Department of Natural Resources; John C. Boyle, III, in his official capacity as Commissioner of the Alaska Department of Natural Resources; Alaska Division of Agriculture; Bryan Scoresby, in his official capacity as Director of the Alaska Division of Agriculture; and Nancy Dahlstrom, in her official capacity as Alaska Lieutenant Governor. Docket 14 at 1.

[2] Plaintiffs are AK Industrial Hemp Association, Inc.; Primo Farms North LLC d/b/a Primo; GD Sales LLC d/b/a Hempire-Co.; McDonough Corp Inc., d/b/a Frontier CBDs; ALASKA EDIBLES LLC, d/b/a Alaska Gummies; NuLyfe Labs, LLC; Jennah Torres on behalf of R.T. (a minor child); Sara Post; and Charles Bishop Jr. Docket 14 at 1.

[3] Because Plaintiffs failed to respond to the Motion, the Court considers Defendants' properly supported facts to be undisputed. *See* Fed. R. Civ. P. 56(e)(2).

[4] *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 686 (9th Cir. 2022) (citation omitted).

regulated by the federal Controlled Substances Act, which broadly defined marijuana to include all cannabis.[5]

In 2018, the federal government enacted the Agricultural Improvement Act ("2018 Farm Act"),[6] which legalized the production of hemp by excluding it from the Controlled Substance Act's definition of marijuana.[7] The 2018 Farm Act defined "hemp" as

> the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9-tetrahydracannabinol concentration of not more than 0.3 percent on a dry weight basis.[8]

As a result, under federal law the concentration of delta-9-tetrahydracannabinol ("delta-9-THC")—the main psychoactive compound in the cannabis plant—now distinguishes hemp from marijuana for purposes of hemp production.[9]

The 2018 Farm Act further authorized states to take "primary regulatory authority over the production of hemp in the State" if the state submitted a hemp regulation plan to the U.S. Department of Agriculture ("USDA") that met certain minimum requirements.[10] Moreover, the 2018 Farm Act provided that the legislation would not "preempt[] or limit[] any law of a State" that "(i) regulates the production of hemp; and (ii) is more stringent than this subtitle."[11] However, the 2018 Farm Act did preempt state laws that "prohibit the transportation or shipment of hemp or hemp products . . . through the State."[12]

The State of Alaska subsequently created its own regulatory scheme governing industrial hemp production.[13] Although the State's initial regulations were issued after the enactment of the 2018 Farm Act, the authority for these regulations derived from a different source: namely,

---

[5] 21 U.S.C. § 802(16)(A); *see also* Establishment of a Domestic Hemp Production Program, 86 Fed. Reg. 5596 (Jan. 19, 2021).
[6] Pub. L. No. 115-334, 132 Stat. 4490 (Dec. 20, 2018).
[7] *AK Futures LLC*, 35 F.4th at 686 (citation omitted).
[8] 7 U.S.C. § 1639(o)(1).
[9] 86 Fed. Reg. at 5614.
[10] *See* 7 U.S.C. § 1639p(a)(2), (q).
[11] 7 U.S.C. § 1639p(a)(3)(A).
[12] *Id.* § 1639o note.
[13] 11 AAC 40.010–40.910.

Order re Defs' MSJ 2
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 2 of 18

the Agricultural Act of 2014 ("2014 Farm Act").[14] That federal statute allowed institutions of higher education or state departments of agricultural to grow or cultivate "industrial hemp" for research purposes under an agricultural pilot program authorized by state law.[15] In accordance with the 2014 Farm Act, the Alaska legislature passed a statute that authorized the creation of an industrial hemp pilot program, which provided the basis for the State's initial industrial hemp regulations.[16]

The State's industrial hemp regulations—as originally issued in 2020 and later revised—require a person to obtain an endorsement from the Alaska Department of Natural Resources' ("DNR") Division of Agriculture before offering to a consumer in the State any industrial hemp products that are intended for human or animal consumption.[17] "Industrial hemp" is defined by statute in a manner consistent with the definition of "hemp" in the 2018 Farm Act.[18] The first version of the State's regulations further set a 50-milligram cap on the amount of delta-9-THC that could be contained in any individual industrial hemp product.[19]

In 2021, pursuant to the 2018 Farm Act, the State developed and submitted a hemp regulation plan to USDA for approval; the State's plan was approved and took effect on January 1, 2022.[20] The plan did not include any age restrictions "for individuals to purchase endorsed products" from registered retailers, and it did not prohibit "methods of processing or extraction" that could lead to the presence of intoxicating compounds other than delta-9-THC in these products.[21] Thus, "a person of any age c[ould] purchase potentially intoxicating industrial hemp products legally," even though some of those products were "just as intoxicating" as those available in the more heavily regulated marijuana market.[22]

---

[14] *See* Agricultural Act of 2014, Pub. L. No. 113-79, § 7606, 128 Stat. 649, 912–913 (Feb. 7, 2021).
[15] *Id.*
[16] 2018 Alaska Sess. Laws ch. 5.
[17] 11 AAC 40.400(a).
[18] 2021 Alaska Sess. Laws ch. 32, § 8; ALASKA STAT. § 03.05.100(5). Because of the overlap between these definitions, the Court uses the terms "industrial hemp" and "hemp" interchangeably in this order.
[19] 11 AAC 40.415 (2020).
[20] Alaska Dep't of Nat. Res., Div. of Agric., *USDA Industrial Hemp Program Alaska State Plan* (Dec. 28, 2021), https://perma.cc/9JLS-9L5H; *see also* ALASKA STAT. § 03.05.076(i).
[21] Docket 32-2 at 3–5.
[22] Docket 32-3 at 5.

Order re Defs' MSJ 3
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 3 of 18

In 2023, after providing notice and an opportunity to comment, the State amended its industrial hemp regulations in two ways that are relevant to this case. First, the State added a new provision that bars the Division of Agriculture from "endors[ing] an industrial hemp product that contains delta-9-THC or a non-naturally occurring cannabinoid, including a cannabinoid made from an ingredient extracted from industrial hemp and modified beyond its original form."[23] Because an endorsement is required to offer to consumers hemp products intended for human or animal consumption,[24] this amendment effectively prohibits the in-state sale of such products that contain any delta-9-THC or other non-naturally occurring cannabinoid. Second, the State removed the requirement that a person obtain an endorsement to transport within or through Alaska hemp products intended for human or animal consumption.[25]

On September 23, 2023, DNR Commissioner John C. Boyle, III issued an order adopting the amendments to the hemp regulations, and on October 4, 2023, Lieutenant Governor Nancy Dahlstrom accepted, endorsed, and filed the regulations.[26] In a media advisory announcing the adoption and filing of the amended hemp regulations, Commissioner Boyle stated that the new rules would "increase safety for Alaskan children and protections for the regulated cannabis industry in our state. . . . The Industrial Hemp Program was never intended to allow intoxicating products, which are rightfully regulated for the recreational market in Alaska by the Alcohol & Marijuana Control Office."[27] On November 3, 2023, the amendments to the regulations took effect.[28]

On November 2, 2023, Plaintiffs—various corporations that participate in the hemp industry and individuals that use hemp products—commenced this lawsuit by filing a complaint against Defendants challenging the amendments to the State's hemp regulations.[29]

---

[23] 11 AAC 40.400(d); Docket 32-8 at 17.
[24] 11 AAC 40.400(a).
[25] Docket 32-8 at 17.
[26] *Id.* at 4–5.
[27] Docket 32-9 at 1.
[28] *Id.* at 4.
[29] Docket 1.

Case 3:23-cv-00253-KFR   Document 33   Filed 05/23/25   Page 4 of 18

Plaintiffs amended their complaint later that month.[30] Plaintiffs' Amended Complaint contains claims for: (1) declaratory relief for violation of the Supremacy Clause;[31] (2) declaratory relief for violation of the dormant Commerce Clause;[32] (3) regulatory taking;[33] (4) declaratory relief that the amended regulations are void for vagueness;[34] (5) injunctive relief;[35] and (6) declaratory relief that the amended regulations define hemp more narrowly than federal law permits.[36] On December 8, 2023, Defendants answered Plaintiffs' Amended Complaint.[37]

On September 25, 2024, Defendants filed the instant Motion, seeking summary judgment on each of Plaintiffs' claims.[38]

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the case under the governing law.[39] A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable fact-finder to decide in favor of the nonmoving party.[40] When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[41]

The party moving for summary judgment bears the ultimate burden of persuasion and the initial burden of producing evidence that shows the absence of a genuine issue of material

---

[30] Docket 14; Docket 19.
[31] Docket 14 at 34–38, ¶¶ 117–31.
[32] *Id.* at 38–40, ¶¶ 132–48.
[33] *Id.* at 40–43, ¶¶ 149–61.
[34] *Id.* at 43–48, ¶¶ 161–83.
[35] *Id.* at 48–50, ¶¶ 184–96.
[36] *Id.* at 50–51, ¶¶ 197–201. Although Plaintiffs' fifth and sixth claims are separately enumerated, the sole legal bases for those claims are the merits of their four constitutional claims.
[37] Docket 17.
[38] Docket 32.
[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").
[40] *Id.* at 248.
[41] *Id.* at 255.

Order re Defs' MSJ                                                5
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR     Document 33     Filed 05/23/25     Page 5 of 18

fact.[42]  Where the moving party would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."[43]  If the moving party successfully carries its burden of production, the nonmoving party "must produce evidence to support its claim or defense."[44]  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."[45]

### III. DISCUSSION

Defendants contend that they are entitled to summary judgment on the merits of Plaintiffs' claims that the amended industrial hemp regulations (1) violate the Supremacy Clause, (2) violate the dormant Commerce Clause, (3) constitute a regulatory taking, and (4) are void for vagueness.[46]  The Court addresses each argument in turn.

### A. The Amended Industrial Hemp Regulations Do Not Violate the Supremacy Clause.

The Supremacy Clause provides that all "Laws of the United States which shall be made in Pursuance" of the Constitution "shall be the supreme Law of the Land."[47]  The Supremacy Clause thus "invalidates state laws that interfere with, or are contrary to, federal law," and is the source of the preemption doctrine.[48]  Preemption is fundamentally a question of congressional intent.[49]  Courts analyzing preemption are generally to presume that unless a "clear and manifest purpose of Congress" exists, federal acts should not supersede the states'

---

[42] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[43] *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).
[44] *Id.* at 1103.
[45] *Id.* at 1102.
[46] Docket 32 at 21–28.  Defendants also assert that the State, DNR, Division of Agriculture, and Lieutenant Governor are immune from this suit pursuant to the Eleventh Amendment. *Id.* at 20–21. Because the Court disposes of Plaintiffs' claims on the merits, it is unnecessary to address Defendants' Eleventh Amendment immunity argument.
[47] U.S. Const. art. VI, cl. 2.
[48] *Am. Apparel & Footwear Ass'n Inc. v. Baden*, 107 F.4th 934, 938 (9th Cir. 2024) (internal quotation marks omitted) (quoting *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712 (1985)).
[49] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Order re Defs' MSJ
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

6

Case 3:23-cv-00253-KFR     Document 33     Filed 05/23/25     Page 6 of 18

historic police powers.[50]

"Federal preemption can be either express or implied."[51] "Express preemption exists when a statute explicitly addresses preemption."[52] "Where . . . Congress has specifically addressed the preemption issue, [courts'] task is primarily one of interpreting what Congress has said on the subject."[53] Implied preemption includes (1) conflict preemption, which occurs where compliance with both federal and state law is a "physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress";[54] and (2) field preemption, which occurs when "federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."[55]

Plaintiffs allege that the 2018 Farm Act implicitly preempts the State's amended hemp regulations. Specifically, Plaintiffs submit that the regulations impermissibly conflict with the 2018 Farm Act by: (1) "declaring any [hemp] product for human consumption containing delta-9[-]THC as public nuisances and injurious to the public interest," and (2) "pronouncing that Alaska no longer intends to permit the endorsement and therefore the sale of virtually all hemp derived products as all hemp products contain at least some trace amounts of delta-9[-]THC."[56] Plaintiffs insist that these purported developments create a "prohibition on hemp products," which is "diametrically oppose[d]" to the purpose of the 2018 Farm Act.[57]

Defendants argue that the State's amended hemp regulations are not preempted by the 2018 Farm Act. Defendants note that the 2018 Farm Act contains two preemption-related

---

[50] *Id.*; *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484–85 (1996); *Commonwealth of Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016).
[51] *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020).
[52] *Id.*
[53] *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 552–53 (9th Cir. 2022) (internal quotation marks and citation omitted).
[54] *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal quotation marks and citations omitted).
[55] *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013) (noting existence of two types of implied preemption).
[56] Docket 14 at 35, ¶¶ 121–22 (citing 11 AAC 40.800(5)–(6), 40.400(d)).
[57] *Id.* at 35, ¶ 123.

Order re Defs' MSJ 7
*AK Indus. Hemp Ass'n v. AK DNR*

provisions: one that expressly states that "[n]o State . . . shall prohibit the transportation or shipment of hemp or hemp products . . . through the State,"[58] and another that expressly states that "[n]othing in this subsection preempts or limits any law of a State . . . that—(i) regulates the production of hemp; and (ii) is more stringent than this subchapter."[59] According to Defendants, these provisions demonstrate that Congress intended to preempt only state laws prohibiting interstate shipments of hemp, leaving states otherwise free to regulate hemp production in a manner more stringent than the 2018 Farm Act.[60]

The Court agrees with Defendants that Plaintiffs' preemption argument is at odds with the text of the 2018 Farm Act. First, as Defendants point out, the statute specifically preempts state laws that prohibit the transportation or shipment of hemp, and it specifically does not preempt more stringent state laws governing hemp production. Second, the statute "says nothing about whether a state may prohibit possession or sale of industrial hemp."[61] And third, the statute "left plenty of room for state regulation"[62] by establishing a system by which states could take "primary regulatory authority over the production of hemp" after submitting a hemp regulation plan to the USDA.[63] Therefore, "the 2018 Farm [Act] expressly sanctions state regulation" of hemp except with respect to its interstate transportation or shipment.[64]

Plaintiffs have identified no authority that supports their suggestion that the State's amended hemp regulations conflict with the 2018 Farm Act's definition of hemp. To support that proposition, Plaintiffs rely on the Ninth Circuit's decision in *AK Futures LLC v. Boyd St. Distro, LLC*.[65] However, the Ninth Circuit's decision in that trademark and copyright infringement action addresses only the contours of the federal definition of hemp, and has no

---

[58] 7 U.S.C. § 1639o note.
[59] *Id.* § 1639p(a)(3)(A).
[60] Docket 32 at 21–22.
[61] *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546 (7th Cir. 2020).
[62] *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 494 (4th Cir. 2025)
[63] 7 U.S.C. § 1639p(a)(1).
[64] *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 494 (4th Cir. 2025). There is no dispute that the State's amended regulations do not violate the 2018 Farm Act's prohibition on state laws restricting the interstate transportation or shipment of hemp. *See* Docket 32-8 at 17.
[65] 35 F.4th 682 (9th Cir. 2022); *see also* Docket 14 at 28, 48, 50–51, ¶¶ 78, 186, 200.

Order re Defs' MSJ                                    8
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR
Case 3:23-cv-00253-KFR     Document 33     Filed 05/23/25     Page 8 of 18

bearing on whether or how states may regulate hemp.⁶⁶ Plaintiffs offer no other basis to believe that Congress intended to displace the State's inherent power to regulate the hemp market as a "matter[] of health and safety" within the State's borders.⁶⁷ With all indications pointing to the opposite conclusion, the Court must conclude that the amended regulations are consistent with the 2018 Farm Act.

Because Plaintiffs' position is contrary to the 2018 Farm Act's "recogni[tion] [of] the states' ability to regulate the production and sale of industrial hemp . . . within their borders,"⁶⁸ the Court concludes that the State's amended hemp regulations are not preempted by the 2018 Farm Act. Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on Plaintiffs' Supremacy Clause claim. Therefore, the Court grants summary judgment to Defendants on this claim.

### B. The Amended Industrial Hemp Regulations Do Not Violate the Dormant Commerce Clause.

The Commerce Clause empowers Congress "[t]o regulate Commerce . . . among the several States."⁶⁹ "From this affirmative grant of authority to Congress, the Supreme Court has inferred a limitation on the states."⁷⁰ This limitation has come to be known as the dormant Commerce Clause. The dormant Commerce Clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."⁷¹

Modern dormant Commerce Clause doctrine "rest[s] upon two primary principles that mark the boundaries of a State's authority to regulate interstate commerce."⁷² First, state regulations "may not discriminate against interstate commerce"; and second, state regulations

---

⁶⁶ *See* 35 F.4th at 688 (explaining that "the parties dispute whether the possession and sale of delta-8 THC is permitted under *federal law* and, consequently, whether a brand used in connection with delta-8 THC products may receive trademark protection" (emphasis added)).
⁶⁷ *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997).
⁶⁸ *N. Va. Hemp & Agric.*, 125 F.4th at 495.
⁶⁹ U.S. Const. art. I, § 8, cl. 3.
⁷⁰ *Flynt v. Bonta*, 131 F.4th 918, 923 (9th Cir. 2025).
⁷¹ *Or. Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 98 (1994).
⁷² *South Dakota v. Wayfair*, 585 U.S. 162, 173 (2018).

Order re Defs' MSJ 9
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR
Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 9 of 18

"may not impose undue burdens on interstate commerce."[73] "In this context, '"discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'"[74] "[I]f a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to 'advanc[e] a legitimate local purpose.'"[75] But if a state law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."[76]

Plaintiffs allege that the State's amended hemp regulations violate the dormant Commerce Clause because the regulations "benefit[] marijuana and burden[] hemp in interstate commerce."[77] Plaintiffs explain that the State's ban on the endorsement of industrial hemp products intended for consumption that contain any delta-9-THC has "clear protectionist effects benefitting the Alaska marijuana industry, while harming the hemp industries in Alaska and other states[.]"[78]

Defendants contend that the amended hemp regulations do not offend the dormant Commerce Clause because they are nondiscriminatory and "target a bona fide public health concern: the easy availability of . . . product[s] that contain[] delta-9-THC or a non-naturally occurring cannabinoid to a person under 21 years-of-age."[79] Defendants further maintain that the differential treatment between the hemp and marijuana markets in Alaska is justified "because there is no federal market for marijuana."[80]

As an initial matter, the Court's analysis is governed by the second dormant Commerce Clause theory described above. To the extent Plaintiffs suggest that the State's amended hemp

---

[73] *Id.*
[74] *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007).
[75] *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 518 (2019) (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008)).
[76] *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).
[77] Docket 14 at 38, ¶¶ 140–41.
[78] *Id.* at 39, ¶ 145.
[79] Docket 32 at 23.
[80] *Id.*

Order re Defs' MSJ 10
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 10 of 18

regulations discriminate against out-of-state hemp retailers,[81] the Court disagrees. On their face, the amended regulations provide that *any* hemp retailer—regardless of its location—may not offer products intended for human or animal consumption that contain delta-9-THC.[82] Plaintiffs present no evidence that the regulations treat out-of-state hemp retailers any differently from their in-state counterparts. Moreover, the State's differential regulation of the marijuana market does not render the amended hemp regulations discriminatory. The effects of those regulations on out-of-state hemp retailers cannot be compared to those effects on in-state marijuana retailers or other participants in the marijuana market, for those entities are not similarly situated.[83]

Because there is no indication that the State's amended hemp regulations are discriminatory, Plaintiffs must establish that the State's amended hemp regulations impose a burden on interstate commerce that is "clearly excessive in relation to [the regulations'] putative local benefits."[84] However, Plaintiffs have submitted no evidence tending to prove such an undue burden on interstate commerce.[85] Meanwhile, Defendants have identified a legitimate local purpose for the amended regulations: the need to address a public health and safety

---

[81] *See* Docket 14 at 37, ¶ 138.
[82] *See* 11 AAC 40.400(a), (d).
[83] In determining whether a state law has a discriminatory effect against a type of out-of-state entity, courts must compare the effects on those out-of-state entities with "similarly situated in-state entit[ies]." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525 (9th Cir. 2009) (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997)). Plaintiffs have made no effort to demonstrate that out-of-state hemp retailers are similarly situated to in-state marijuana retailers, and the fact that both hemp and marijuana products may contain delta-9-THC does not result in that conclusion. *See id.* at 525–28 (rejecting argument that opticians were similarly situated to optometrists and ophthalmologists, even though all three types of professionals compete in same market for sale of eyewear, and concluding that state laws that "ma[de] no geographical distinctions" between in-state and out-of-state opticians did not violate dormant Commerce Clause). The Court agrees with Defendants that there are valid reasons for the State to regulate marijuana differently from hemp, as marijuana remains illegal under federal law.
[84] *Pike*, 397 U.S. at 142.
[85] Plaintiffs suggest in their Amended Complaint that the State's interest in protecting minors from intoxicating hemp products could have been advanced in a less restrictive way, for instance, by setting a minimum purchase age for those products, as the State has done for alcohol, tobacco, and marijuana. Docket 14 at 40, ¶ 147. But because the State's amended regulations do not discriminate against interstate commerce, the regulations are not subject to strict scrutiny. Furthermore, Defendants submit without challenge that DNR would not have been authorized to issue the type of regulation that Plaintiffs contemplate. Docket 32 at 24 (citing ALASKA STAT. §§ 03.05.010(a)(7), 03.05.076).

Order re Defs' MSJ 11
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 11 of 18

concern by restricting access to "intoxicating products" that the State "never intended to allow" through its Industrial Hemp Program.[86] The Court "must give deference to the State's choice to protect its citizens in this way."[87] Thus, the State's amended hemp regulations, which "appl[y] equally to in-state and out-of-state interests," do not offend the dormant Commerce Clause.[88]

Because the State's amended hemp regulations "apply equally to in-state and out-of-state interests" and Defendants have shown that the regulations are justified by a legitimate public health and safety concern,[89] the Court concludes that the regulations do not offend the dormant Commerce Clause. Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on Plaintiffs' dormant Commerce Clause claim. Therefore, the Court grants summary judgment to Defendants on this claim.

### C. The Amended Industrial Hemp Regulations Do Not Amount to a Regulatory Taking.

Under the Fifth Amendment's Takings Clause, applicable to the States through the Fourteenth Amendment, the government may not take private property for public use without just compensation.[90] The Supreme Court has recognized two types of claims under the Takings Clause. First, "[w]hen the government carries out 'a physical appropriation of property, a *per se* taking has occurred.'"[91] Second, "when the government 'has instead restricted a property owner's ability to use his own property,'" a regulatory taking may have occurred.[92] To determine whether a government action constitutes a regulatory taking, a court must employ the three-factor test announced in *Penn Central Transportation Co. v. City of New York*.[93]

---

[86] Docket 32-9 at 1.
[87] *Nat'l Ass'n of Optometrists*, 567 F.3d at 526.
[88] *N. Va. Hemp & Agric.*, 125 F.4th at 497.
[89] *Id.*
[90] U.S. Const. amend. V.
[91] *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1281 (9th Cir. 2021) (quoting *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021)).
[92] *Id.* (quoting *Cedar Point Nursery*, 594 U.S. at 149).
[93] *Id.* (citing 438 U.S. 104 (1978)).

Order re Defs' MSJ 12
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 12 of 18

Specifically, the court must conduct an "'ad hoc, factual inquir[y]' into (1) '[t]he economic impact of the regulation on the [property owner],' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action.'"[94]

Plaintiffs allege in their Amended Complaint that the "destruction" of hemp products that no longer qualify for endorsement under the State's amended regulations amounts to a regulatory taking.[95] Plaintiffs assert that the amended regulations "effectively create a ban of hemp products containing any amount of delta-9-THC," thus destroying the value of products that had been endorsed under the prior regulations.[96] According to Plaintiffs, this result constitutes a "deprivation of all, or substantially all, beneficial economic use of [their] hemp-derived products, lines of business, and goodwill created with the consumers of the State of Alaska."[97]

Defendants argue that the amended hemp regulations do not effect a regulatory taking because they leave Plaintiffs free to sell in other states those hemp products that do not meet the State's criteria for endorsement.[98] Defendants further maintain that Plaintiffs have no evidence that the amended regulations have interfered with any specific investment-backed expectations that Plaintiffs had.[99] Moreover, Defendants describe the character of the governmental action as an "interference [that] arises from [the Alaska Industrial Hemp Program] adjusting the benefits and burdens of economic life to promote the common good," by limiting minors' access to potentially intoxicating hemp products.[100]

The Court agrees with Defendants that the State's amended hemp regulations do not amount to a regulatory taking. As Defendants point out, the amended regulations do not

---

[94] *Id.* (quoting *Penn Cent.*, 438 U.S. at 124).
[95] Docket 14 at 40, ¶ 150. Plaintiffs do not suggest that the amended hemp regulations amount to a *per se* taking, and Defendants note that there is no evidence that DNR has seized private property belonging to any Plaintiff.
[96] *Id.* at 41–42, ¶¶ 153, 161.
[97] *Id.* at 42, ¶ 160.
[98] Docket 32 at 25.
[99] *Id.*
[100] *Id.* (quoting *Penn Cent.*, 438 U.S. at 124).

Order re Defs' MSJ 13
*AK Indus. Hemp Ass'n v. AK DNR*
Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 13 of 18

prohibit Plaintiffs from selling hemp products containing delta-9-THC intended for human or animal consumption to consumers in other states. Plaintiffs' apparent "ret[ention] [of] the rights to possess and transport their property" indicates that the economic effect of the amended regulations does not rise to the level of a regulatory taking.[101] Plaintiffs have failed to produce any evidence to the contrary or that might otherwise show that they are "unable to derive economic benefit" from the hemp products at issue.[102] Plaintiffs have likewise failed to produce evidence as to the extent to which the amended hemp regulations have "interfered with distinct investment-backed expectations."[103] In addition, Plaintiffs have failed to produce evidence disputing Defendants' public health and safety justification of the amended regulations. The amended regulations might "curtail[] some potential for the use or economic exploitation of private property" through the "adjustment of rights for the public good," but that is not a violation of the Takings Clause.[104]

Because Plaintiffs have submitted no evidence creating a genuine dispute of material fact as to any of the three elements of the *Penn Central* test, the Court concludes that the State's amended hemp regulations do not amount to a regulatory taking. Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on Plaintiffs' regulatory taking claim. Therefore, the Court grants summary judgment to Defendants on this claim.

### D. The Amended Industrial Hemp Regulations Are Not Unconstitutionally Vague.

Under the Fourteenth Amendment's Due Process Clause, a state law is void for vagueness if either "fails to provide a person of ordinary intelligence fair notice of what is

---

[101] *Andrus v. Allard*, 444 U.S. 51, 66 (1979).
[102] *Id.*
[103] *Penn Cent.*, 438 U.S. at 124 (citation omitted); *see also CDK Glob.*, 16 F.4th at 1282 ("As a general matter, 'in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [a property owner] ought to be aware of the possibility that new regulation might even render his property economically worthless.'" (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027–28 (1992))).
[104] *Andrus*, 444 U.S. at 65.

Order re Defs' MSJ 14
*AK Indus. Hemp Ass'n v. AK DNR*
Case No. 3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 14 of 18

prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."[105] The void-for-vagueness doctrine "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."[106]

As to fair notice, "[t]he operative question under th[is] . . . theory is whether a reasonable person would know what is prohibited by the law."[107] "The terms of a law cannot require 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'"[108] As to standardless enforcement, courts ask whether the law provides "objective standards" that "establish minimal guidelines to govern . . . enforcement."[109] To prevail in a vagueness challenge, a plaintiff carries the heavy burden of proving that "the enactment is vague, 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'"[110] Moreover, "[e]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."[111]

Plaintiffs allege in their Amended Complaint that the State's amended hemp regulations are void for vagueness because they "create substantial confusion for registered hemp cultivators, processors, and retailers within the state regarding their federally legal

---

[105] *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also* U.S. Const. amend. XIV (providing that no state "shall . . . deprive any person of life, liberty, or property, without due process of law").
[106] *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); see also *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (noting that vague laws violate the "basic principle of due process," including "fair warning" and "explicit standards for those who apply [the laws]").
[107] *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022).
[108] *Id.* (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010)).
[109] *Gonzales v. Carhart*, 550 U.S. 124, 150 (2007).
[110] *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7 (1982) (quoting *Parker v. Levy,* 417 U.S. 733, 756 (1974)).
[111] *Id.* (footnotes omitted).

Order re Defs' MSJ 15
*AK Indus. Hemp Ass'n v. AK DNR*
Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 15 of 18

commodities."[112] Plaintiffs maintain that it is unclear when DNR might "declare certain hemp products as a public nuisance injurious to the public interest" and subsequently "direct the . . . destruction" of such products, as the agency is authorized to do under 11 AAC 40.800(5)–(6).[113] In addition, Plaintiffs suggest that the amended regulations "are silent and provide registrants and the public zero guidance regarding the criminality of hemp possession after the regulations go into effect."[114]

Defendants contend that the amended hemp regulations are not void for vagueness because they provide fair warning about what is prohibited and set sufficiently clear standards for enforcement.[115] First, Defendants argue that the meaning and impact of the amendments is clear: they ended the lawful sale of hemp products intended for consumption that contain delta-9-THC or non-naturally occurring cannabinoids.[116] Defendants note that public comments that Plaintiff Primo submitted in response to the proposed amendments, as well as that business's adjustment of behavior after notice of the proposed amendments was published (namely, its reduction of hemp product purchases and giveaways of hemp products to consumers to reduce inventory and attract customers), further demonstrate that the regulations provided fair notice.[117] Second, Defendants argue that although the enforcement provisions set forth in 11 AAC 40.800(5)–(6) grant the Division of Agriculture discretionary authority to declare a hemp product for human consumption that contains delta-9-THC to be a public nuisance or to destroy such a product, that authority is not standardless, as the Division may exercise it only "[t]o carry out the provisions of this chapter."[118]

The Court finds that Plaintiffs have failed to identify any way in which the State's amended hemp regulations are unconstitutionally vague. The Court concurs with Defendants that the regulations provide fair notice to a reasonable person of what is prohibited: namely,

---

[112] Docket 14 at 43, ¶ 164.
[113] *Id.* at 44–46, ¶¶ 167, 170, 176.
[114] *Id.* at 47, ¶ 181.
[115] Docket 32 at 26–28.
[116] *Id.* at 26. Defendants also note that Plaintiff Primo's public comments on the proposed amendments demonstrate that that business understood the meaning of the amendments. *Id.*
[117] *Id.* at 26–27 (citing Docket 32-5; Docket 32-7 at 7–12).
[118] *Id.* at 27–28 (citing 11 AAC 40.800).

Order re Defs' MSJ 16
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR     Document 33     Filed 05/23/25     Page 16 of 18

offering to consumers in Alaska any hemp products intended for human or animal consumption that contain delta-9-THC or any non-naturally occurring cannabinoid, as the Division of Agriculture can no longer endorse those products.[119] The regulatory language is not particularly complex, even from the perspective of a lay person.[120] Moreover, the regulatory language contains terms whose meanings—if not immediately apparent—can be deciphered from statutory and regulatory definitions, as well as context.[121] To the extent that the amended regulations are unclear in any other way,[122] Plaintiffs are mostly businesses that had the "ability to clarify the meaning of the regulation[s] by [their] own inquiry," but they have not shown that any efforts they made to do so were unavailing.[123]

Moreover, the public nuisance provisions in 11 AAC 40.800(5)–(6) are not so indefinite that they provide no objective standards to protect against arbitrary or discriminatory enforcement. Defendants correctly observe that the Division of Agriculture may act through those provisions in order "[t]o carry out the provisions of this chapter [pertaining to the State's Industrial Hemp Program]."[124] This reference to a specific set of regulatory provisions is sufficient to provide an "explicit standard" for enforcement,[125] particularly because the declaration or destruction of hemp products as a public nuisance does not carry any associated

---

[119] 11 AAC 40.400(a), (d).
[120] *Cf. Hill v. Colorado*, 530 U.S. 703, 732 (2000) (holding that statute regulating speech was not impermissibly vague due to failure to provide fair notice where statute used "common words" that were likely to be understood).
[121] *See Winters v. New York*, 333 U.S. 507, 519 (1948) (striking down clause in criminal statute for vagueness where language at issue "ha[d] no technical or common law meaning[,]" and where immediate and broader statutory context provided no further clarity); *Sessions v. Dimaya*, 584 U.S. 148, 159 (2018) (noting that "[m]any perfectly constitutional statutes use imprecise terms").
[122] The Court notes that Plaintiffs have failed to provide any evidentiary support for their allegations that, based on the amended regulations, the State could criminally prosecute any individuals or entities for possession of hemp products that can no longer be endorsed. Plaintiffs' argument also runs counter to the statutes cited in their Amended Complaint, which indicate that hemp products that qualified for endorsement under the previous regulations are not controlled substances that could give rise to criminal liability. *See* Docket 14 at 43–44, ¶¶ 164–67 (citing ALASKA STAT. §§ 03.05.100, 11.71.900(15)).
[123] *See Vill. of Hoffman Ests.*, 455 U.S. at 498.
[124] 11 AAC 40.800.
[125] *See Grayned*, 408 U.S. at 108.

Case 3:23-cv-00253-KFR     Document 33     Filed 05/23/25     Page 17 of 18

criminal penalties and does not appear to infringe any constitutional rights.[126] Plaintiffs have offered no evidence or argument that might call that conclusion into question.

Because Defendants have demonstrated, without dispute from Plaintiffs, that the State's amended hemp regulations provide fair notice of what they prohibit and do not allow for standardless enforcement, the Court concludes that those regulations are not impermissibly vague. Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on Plaintiffs' claim that the amended industrial hemp regulations are void for vagueness. Therefore, the Court grants summary judgment to Defendants on this claim.

## IV. CONCLUSION

Defendants have shown that there is no genuine issue of material fact as to any of Plaintiffs' claims and that they are entitled to summary judgment in their favor.[127] Therefore, Defendants' Motion for Summary Judgment at Docket 32 is **GRANTED**. All of Plaintiffs' claims in their Amended Complaint are **DISMISSED**. The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 23rd day of May, 2025, at Anchorage, Alaska.



/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

---

[126] *See VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010) ("The degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all." (internal quotation marks and citation omitted)).

Order re Defs' MSJ 18
*AK Indus. Hemp Ass'n v. AK DNR*
3:23-cv-00253-KFR

Case 3:23-cv-00253-KFR    Document 33    Filed 05/23/25    Page 18 of 18